GROUND FOR HABEAS RELIEF NO. 7
(Restated)
THE IN-COURT IDENTIFICATION TESTIMONY OF WITNESS BARGAINER WAS UNCONSTITUTIONALLY TAINTED BECAUSE THE STATE'S USE OF IMPROPER HYPNOTICALLY ENHANCED IDENTIFICATION PROCEDURES, THUS DENYING PETITIONER DUE PROCESS OF LAW UNDER ARTICLES I, SECTIONS 14 AND 19, TEXAS CONSTITUTION AND THE 14 AMENDMENT TO THE U.S. CONSTITUTION. (R. VOL. 25, 153-162; 26, 12-118).

Introduction

Counsel for petitioner on habeas would note that this present issue is also being raised in the appellant's brief on direct appeal. Because of the importance of this issue, since this witness his testimony was the only direct evidence of petitioner's identification at the scene of this crime, this issue needs to be raised in this application for writ of habeas corpus.

Counsel for petitioner herein has requested from appeal counsel Robert Abbott permission to utilize his Summary Of The Facts as part of this habeas petition, and counsel has received permission from Mr. Abbott to "plagarize" portions of his brief on this habeas Ground Of Error.

Statement Of Facts

When the State called to the witness stand Jill Bargainer, who up until this time had never identified anyone as the Volkswagen passenger that entered the complainant's garage on the morning of the murder, the trial court excused the jury in order to conduct a sub rosa hearing. (R.35-153-56). Outside the jury's presence, defense counsel expressed concern that improper hypnosis techniques might have tainted Ms. Bargainer's testimony. (R.35-156-61). The trial court admitted a videotape of the hypnosis session, and the State agreed to produce witnesses the next morning for a hearing on the matter. (R.35-156-57,161-62; R.43-S/E-84).

At the start of this hearing, the trial court and prosecutor announced onto the record that Ms. Bargainer, previously unable to identify the

Volkswagen passenger, had now informed the State that she could identify Appellant as one of the men entering Ms. Black's house. (R.36-12-14). Defense counsel promptly objected that the Ms. Bargainer's hypnosis tainted the proposed in-court identification testimony. (R.36-15-17). The State then elicited the testimony of four witnesses on this issue outside the jury's presence: Officer Jerry Baker of the Farmers Branch Police Department, an investigator in the Black murder case who set up the video equipment and observed the hypnosis session; Officer Alfredo Serna, the policeman who conducted the hypnosis session; Dr. George Mount, a psychologist with experience in forensic hypnosis who testified as an expert witness regarding the techniques employed by Officer Serna; and Ms. Bargainer, the subject of the hypnosis session. (R.36-18-19,33-36,60-61,87). At the conclusion of this hearing, the trial court overruled Appellant's objection to the identification testimony in question. (R.35-117-18). The trial court did, however, grant Appellant a running objection to the identification testimony. (R.36-277-78). Ms. Bargainer comprised the only witness to identify Appellant at the scene of the crime. (R.36-283).

## ARGUMENT AND AUTHORITIES

The proponent of hypnotically-refreshed testimony must sustain the burden to prove its trustworthiness by clear and convincing evidence. Zani v. State, 758 S.W.2d 233, 243 (Tex. Crim. App. 1988); see also Kelly v. State, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992) (approving Zani standard for cases tried after effective date of former Tex. R. Crim. Evid. 702). The Court fashioned this rule in Zani because of the uncertainties inherent in post-hypnotic testimony. See Zani v. State, 758 S.W.2d at 243. In deciding whether to admit post-hypnotic testimony, this Court cautioned trial courts to remain alert to the four recognized dangers of hypnosis: (1) hypersuggestibility, (2) loss of critical judgment, (3) confabulation, and (4)

memory cementing. Spence v. State, 795 S.W.2d 743, 756 (Tex. Crim. App. 1990), cert. denied, 499 U.S. 932 (1991); Zani v. State, 758 S.W.2d at 243-44.

The Zani opinion also expounded the following non-exhaustive list of factors for trial courts to consider in determining the trustworthiness of testimony induced by hypnotic recall:

> "the level of training in the clinical uses and forensic applications of hypnosis by the person performing the hypnosis; the hypnotist's independence from law enforcement investigators, prosecution, and defense; the existence of a record of any information given or known by the hypnotist concerning the case prior to the hypnosis session; the existence of a written or recorded account of the facts as the hypnosis subject remembers them prior to undergoing hypnosis; the creation of recordings of all contacts between the hypnotist and the subject; the presence of persons other than the hypnotist and the subject during any phase of the hypnosis session, as well as the location of the session; the appropriateness of the induction and memory retrieval techniques used; the appropriateness of using hypnosis for the kind of memory loss involved; and the existence of any evidence to corroborate the hypnotically-enhanced testimony."

Overt or subtle suggestion of answers during the hypnotic session would constitute another obvious factor. Zani v. State, 758 S.W.2d at 244. The trial court may admit the testimony if, after considering the totality of the circumstances, the judge finds by clear and convincing evidence that hypnosis neither rendered the witness's post-hypnotic memory untrustworthy nor substantially impaired the ability of the opposing party to test that recall on cross-examination. Id.

In reviewing mixed questions of fact and law, an abuse of discretion standard does not necessarily apply if resolution of the issue does not depend upon an evaluation of credibility and demeanor. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Appellate tribunals may conduct a de novo review if the ultimate question in the case turns upon the application of a legal standard rather than credibility. See id. Trial courts do not enjoy a better position than the appellate tribunal from which to determine whether the hypnotist employed proper safeguards against the danger that (1) the post-hypnotic testimony has been rendered untrustworthy, or (2) the opposing party can no longer fairly test the witness's recall on cross-examination. Hughes v. State, 7 S.W.3d 880, 882 (Tex. App. -- Amarillo 1999, no pet. h.). Reliability of post-hypnotic testimony thus forms such a "mixed question of fact and law," subject to de novo review independent of witness demeanor and credibility. Id.; Soliz v. State, 961 S.W.2d 545, 548 (Tex. App. -- San Antonio 1997, pet. ref'd).

The record of the "Zani" hearing in this case reflects the following information with regard to the enumerated factors:

1. The level of training in the clinical uses and forensic applications of hypnosis by the person performing the hypnosis. The Texas Commission on Law Enforcement, Officer Standards and Education (TCLEOSE) certified Officer Serna as a forensic hypnotist after his successful completion of an examination administered in 1996. (R.XXXVI-34-35,42-43). He had received forty hours of training in investigative and forensic hypnosis at the University of Houston. (R.XXXVI-34). Officer Serna understood, and attempted to guard against, the four dangers of hypnosis described in Zani. (R.XXXVI-35-36,39-42,49-51).
2. The hypnotist's independence from law enforcement investigators, prosecution, and defense. At the time of trial, Officer Serna had worked for the Farmers Branch Police Department for six-and-a-half years. (R.XXXVI-33). He collected and documented evidence at the scene of Ms. Black's murder and from the burnt Volkswagen, but did not interview

any witnesses except Ms. Bargainer. (R.XXXVI-21,37-38,43). With regard to Ms. Bargainer, Officer Serna knew only that this potential witness saw two people going into the victim's house. (R.XXXVI-43-44).

3. The existence of a record of any information given or known by the hypnotist concerning the case prior to the hypnosis session. The police videotaped Officer Serna's pre-hypnosis interview with Ms. Bargainer. (R.XXXVI-43-44). No other record was made of Officer Serna's knowledge about the case. He denied any knowledge of Appellant's identity or physical appearance, but had to acquire some information about the case as a result of his evidence collection activates. (R.XXXVI-37-38).

4. The existence of a written or recorded account of the facts as the hypnosis subject remembers them prior to undergoing hypnosis. As previously discussed, the police videotaped Officer Serna's pre-hypnosis interview with Ms. Bargainer. (R.XXXVI-43-44). No other record exists of Ms. Bargainer's recollection of the events surrounding the offense before the hypnosis session, although she had already identified Ricky Childs as the Volkswagen's driver. (R.XXXVI-43,55). Officer Serna did not recall Ms. Bargainer providing a physical description of the suspect before the hypnosis session. (R.XXXVI-55-57).

5. The creation of recordings of all contacts between the hypnotist and the subject. The police videotaped all of the pre-hypnosis interview, and the hypnosis session itself, which comprised the only contact between Officer Serna and Ms. Bargainer. (R.XXXVI-24,39,44-45). Officer Serna could offer no explanation, however, for why the camera focused primarily on Ms. Bargainer so that most of the gestures and actions of the other persons present could not be seen. (R.XXXVI-54-55).

6. The presence of persons other than the hypnotist and the subject during any phase of the hypnosis session, as well as the location of the session. Officer Baker was present for the session, but never uttered a word. (R.XXXVI-19-20,45). The session took place at the police department inside the office of a lieutenant in the Narcotics Division. (R.XXXVI-45-46). Officer Serna selected this site because of its relative seclusion and

quiet compared to the rest of the police station. (R.XXXVI-46). He did not attempt to explain to the requesting investigator that the session should not be conducted in a "law enforcement atmosphere." (R.XXXVI-53).

7. The appropriateness of the induction and memory retrieval techniques used. Officer Serna employed the movie theater technique, which he felt the most appropriate method under the circumstances because he "sensed" in Ms. Bargainer a high level of anxiety. (R.XXXVI-46-47,55-56). This procedure permitted the subject to do most of the talking, and thus maintain a level of control. (R.XXXVI-46-47).

8. The appropriateness of using hypnosis on the kind of memory loss involved. For this factor, Officer Serna simply reiterated his opinion regarding the seventh factor discussed above. (R.XXXVI-46-47). There was, in essence, no testimony or argument on this factor.

9. The existence of any evidence to corroborate the hypnotically-enhanced testimony. The State relied upon the testimony of various witnesses who observed Appellant and Childs together, or saw Appellant inside the Volkswagen, prior to the murder to corroborate Ms. Bargainer's identification testimony. (R.XXXVI-111-12). The State claimed further corroboration in the form of Appellant's statements to a friend and father-in-law admitting his presence at the scene. (R.XXXVI-112-13).

10. The presence or absence of overt or subtle cuing or suggestion of answers during the hypnotic session. The police officers denied any type of cuing or suggestive behavior with Ms. Bargainer. (R.XXXVI-22,47). Officer Serna conceded, nevertheless, that the videotape would best evince any improper techniques. (R.XXXVI-56). The tape reflects that the officer repeated portions of Ms. Bargainer's physical description of the suspect, i.e., "pretty eyes," "dark hair," etcetera. (R.XXXVI-56). Investigator Baker attended the session, but never uttered a word. (R.XXXVI-19-20,45).

In addition, the State introduced testimony that Ms. Bargainer appeared to be a suitable subject for hypnosis. (R.XXXVI-48). She appeared in good

mental and physical condition; not overly fatigued, depressed, intoxicated, or under the influence of drugs. (R.XXXVI-48).

The totality of these circumstances does not satisfy the State's burden to prove the reliability of identification testimony by clear and convincing evidence. At the time of trial, the hypnotist had worked for the Farmers Branch Police Department for six-and-a-half years. (R.XXXVI-33). He collected and documented evidence at the scene of Ms. Black's murder and from the burnt Volkswagen. (R.XXXVI-21,37-38,43). Although the police videotaped Officer Serna's pre-hypnosis interview with Ms. Bargainer, no other record exists of her recollection of the events surrounding the offense before the hypnosis session. (R.XXXVI-43-44,55). Officer Serna did not recall Ms. Bargainer providing a physical description of the suspect before the hypnosis session. (R.XXXVI-55-57). The police offered no explanation for why the camera focused primarily on Ms. Bargainer so that most of the gestures and actions of the other persons present could not be seen. (R.XXXVI-54-55).

The investigating police officer attended the hypnosis session, which took place in a police lieutenant's office. (R.XXXVI-19-20,45-46). Officer Serna did not attempt to explain to the requesting investigator that the session should not be conducted in a "law enforcement atmosphere." (R.XXXVI-53). The police officers denied any type of cuing or suggestive behavior with Ms. Bargainer, but Officer Serna conceded that the videotape would best evince any improper techniques. (R.XXXVI-22,47,56). The tape reflects that the officer repeated portions of Ms. Bargainer's physical description of the suspect, i.e., "pretty eyes," "dark hair," etcetera. (R.XXXVI-56).

In <u>Mersch v. City of Dallas</u>, ___ F.3d ___ (5th Cir, No. 98-11115, opinion of March 21, 2000), the Court of Appeals, in a civil case, held:

"In this §1983 excessive force case, the question of qualified immunity hinges on whether a plaintiff's hypnotically-refreshed testimony is admissible to prove that two arresting police officers assaulted her......While constitutional safeguards applicable to criminal cases may suggest extra caution when hypnotically-enhanced evidence is offered by the prosecution, there is no other reason why the analyses should substantially differ, and other courts have adopted a consistent approach to both civil and criminal cases. This court will be guided by our earlier cases. Hypnotically-enhanced testimony is not per se inadmissible in the Fifth Circuit. See Wicker v. McCotter, 783 F.2d 487, 492 (5th Cir. 1986)."

and

"This Court has, however, identified one situation where hypnotically-enhanced testimony is per se inadmissible. In United States v. Valdez, a Texas Ranger participating in surveillance to investigate an extortion attempt witnessed a man approach the money-drop area and then turn away. He was later unable to identify the man in a lineup. The Ranger knew that Valdez was the prime suspect in the investigation. After undergoing hypnosis, the Ranger identified the man he had seen as Valdez. There was no other corroboration for the identification of Valdez at the drop site. See United States v. Valdez, 722 F.2d 1196, 1197 - 1198 (5th Cir. 1984). This Court held that "when ... a hypnotized subject identifies for the first time a person he has reason to know is already under suspicion, the post-hypnotic testimony is inadmissible whatever procedural safeguards were used to attempt to sanitize the hypnotic session." United States v. Valdez, 722 F.2d at 1203. Mersch's case appears to fit squarely within the holding of Valdez. Mersch knew that her sister suspected the police officers of being responsible for Mersch's injuries. She also admitted in her deposition that, pre-hypnosis, her own suspicions of the police officers were based on the fact that she had been in their custody rather than on any concrete memory of an assault. Like the Ranger in Valdez, Mersch had a suspicion but no direct evidence to substantiate her suspicion. Under such circumstances, as we recognized in Valdez, hypnotically-enhanced testimony is so unreliable as to be more prejudicial than probative......See Borawick v. Shay, 68 F.3d 597, 608 - 609 (2d Cir. 1995); Sprynczynatyk v. General Motors Corp., 771 F.2d 1112, 1119 - 1124 (8th Cir. 1985)."

The <u>Mersch</u> court then entered a judgment reversing and rendering this civil case, based upon the in admissibility of this identification made after a hypnosis proceeding. Petitioner submits that even though the witness in the instant case did not make an identification "during" be hypnosis session, she clearly underwent hypnosis at earlier point, and was obviously shown photographs of the petitioner by agents of the state at sometime during the investigation, after the petitioner had been arrested and/or indicted. The record does not reflect that she ever made a pretrial photographic identification, however, Petitioner submits that is only a logical that such identification process would have been attempted by the prosecutors prior to putting this witness on the witness stand.

Then, to the witness appeared at the courthouse, during the petitioner's trial, and saw Petitioner, she then apparently, for the first time, by the admission of the state, made a *positive identification* of petitioner as being at the murder scene on the morning in question. It would appear that this belated identification, made months after the crime, without corroboration, after a hypnosis session, would render the identification in this case unreliable and tainted under the rules set out by the Fifth Circuit Court of Appeals in <u>Mersch</u>. See also <u>Rock v. Arkansas</u>, 483 U.S. 44, 60 - 61, 107 S.Ct. 2704, 2713 - 2714, 97 L.Ed.2d 37 (1987.

For this error, Petitioner submits that he has been deprived of Due Process Of Law by this tainted identification, thus requiring that this conviction that be set aside.