## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **CHARLES FLORES,** | § | |
| **Petitioner** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 3:07-CV-413** |
| | § | **"ECF"** |
| **NATHANIEL QUARTERMAN, Director** | § | **Referred to U.S. Magistrate** |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutional Division** | § | |

## PETITIONER'S REPLY TO RESPONDENT'S ANSWER

COMES NOW CHARLES FLORES, Petitioner herein, and replies to Respondent's

Answer of August 1, 2008, as follows:

### I.

### Exhaustion

Respondent first asserts that Flores is procedurally barred from raising all of his grounds for

relief. Specifically, Respondent contends that Petitioner's claims were not exhausted at the State

level because he failed to raise the first and fourth grounds at the State level at all and because his

remaining grounds for relief, although raised at the State level, are based in large part on evidence

never presented to the State courts.

A review of the records in this case reveals that Flores did raise his second and third grounds

for relief at the State habeas level. Flores's claims when raised at the State level did not, however,

have the evidentiary support submitted to this Court. Flores has submitted to this Court several

additional exhibits in support of his claims, including an affidavit from an expert on hypnosis testimony and additional published materials from periodicals and depositions.

Respondent contends that Flores has failed to exhaust his State court remedies with respect to his second and third grounds for relief because this additional evidentiary support was not submitted at the State court level. As support for this position, Respondent cites to *Graham v. Johnson,* 94 F.3d 958, 968 (5th Cir. 1996), in which the Fifth Circuit held that a habeas petitioner has failed to exhaust his State court remedies if he presents "material additional evidentiary support" for his claims to the Federal court. Flores asserts that these claims are not unexhausted claims. See *Anderson v. Johnson,* 338 F.3d 382 (5th Cir. 2003).

In *Anderson,* the Fifth Circuit held that Anderson had exhausted his ineffective assistance of counsel claims because, although the claims were in a comparatively stronger evidentiary posture than they were in State court because of the additional affidavit submitted at the federal level, Anderson's brief at the State court level was both factually and legally detailed regarding the information that was submitted. Anderson was diligent and consistent in arguing his claim, Anderson did not deliberately withhold essential facts from the State court, and if the State court had held an evidentiary hearing as requested by Anderson, the exculpatory evidence contained in the affidavit would have most likely come to light. *Id.* at 388-89. Thus, the court in *Anderson* held that the new evidence "supplemented" and did not "fundamentally alter" the claim presented to the State court. *Id.* at 386-87.

The Fifth Circuit has more recently re-addressed the issue of whether a claim is exhausted if additional evidence is presented to the Federal court that was not presented to the State court, resulting in a factually stronger habeas claim in federal court. In *Morris v. Dretke,* 413 F.3d 484 (5th

-2-

Cir. 2005), the Fifth Circuit addressed a situation where a petitioner had raised a claim based on *Atkins v. Virginia,* 536 U.S. 304 (2002), in both the State and Federal courts. At the State level, Morris filed a subsequent habeas application based on *Atkins,* and presented evidence supporting his mental retardation claim, including his school records, affidavits from family members and friends, notes from the mental health expert appointed at trial, and an affidavit from a psychologist stating that, based on these records, he believed that there were indications that Morris had mental retardation and should be evaluated. The Court of Criminal Appeals dismissed the application as an abuse of the writ. *Morris,* 413 F.3d at 487-88. Morris submitted the same information to the Federal District Court and, after his motion requesting expert and investigative assistance was granted, also submitted an affidavit from another psychologist who had recently tested Morris's I.Q. and level of adaptive functioning, as well as an affidavit from another mental health expert who reviewed the results of the testing. Both diagnosed Morris as being mentally retarded. *Id.* at 489. The federal district court dismissed the petition for failure to exhaust, based on the fact that this additional evidence was not presented to the State court. *Id.* at 490.

The Fifth Circuit ruled that Morris had not failed to exhaust his claims because, like in *Anderson,* his additional IQ evidence bolstered, but did not fundamentally alter, his claim. In reaching this decision, the Fifth Circuit noted that: Morris's *Atkins* claim was detailed in fact and law when presented at the State level; he had consistently asserted that he is mentally retarded and that, given the resources, tests would confirm this; and Morris did not deliberately withhold facts from the State court in an attempt to expedite federal review. *Morris,* slip op. at 495-96. The Court further noted that the circumstances in *Morris* differed from those in *Graham* because *Graham* presented a substantial amount of new evidence that had not been even abstractly presented to the

State court and Graham's actual innocence and ineffective assistance of counsel claims had not yet been addressed by the State court and, therefore, could have been raised in a subsequent writ. *Morris,* slip op. at 496-97.

The instant case differs also from *Graham* because Flores did raise his second and third claims for relief at the State level. The record reflects that Flores did attempt to obtain evidence to support his second and third claims at the State habeas level. And finally, while Flores does present additional evidence to this Court to support these grounds for relief that was not placed into evidence and was not referred to at the State level, this additional evidentiary support for these claims supplements Flores's claims and does not fundamentally alter them. Flores's second and third grounds for relief are exhausted claims.

II.

Brady Claim

The Respondent takes an inherently inconsistent approach in addressing this issue. On one hand, Respondent faults Flores at length for failing to locate that which is deemed readily available information and common knowledge (Respondent's answer p. 32) while at the same time arguing that the information was so remote and confidential that the prosecutors did not, and could not have known of it at the time of trial. (Respondent's answer p. 37-39) Neither of these positions is correct. Lynch was called at the last minute, without notice, by the capital litigation section of the Dallas District Attorney's office, prosecutors who routinely sponsored Lynch as an expert on fiber analysis. Lynch was an employee of the Dallas County crime lab, known as SWIFS, and he was the State's often-used expert on trace evidence. As an expert in trace evidence, he submitted written statements to his superiors that he was not qualified to conduct fiber analysis, the exact analysis undertaken in

Flores's case. Whether or not the prosecution fully knew the details of Lynch's hospitalization,[1] the prosecution failed to disclose Lynch's admitted lack of qualification. Compare *Benton v. United States*, 815 A.2d 371, 372 (D.C. 2003)(the government failed to disclose at trial that a police witness, Detective Johnny St. Valentine Brown, who testified as an expert on the chain of custody of recovered drugs, had falsified his credentials as an expert in other criminal trials).

This lack of qualification was addressed neither by the Texas Court of Criminal Appeals nor Respondent in her answer. Therefore, the State findings that Lynch's fiber analysis testimony would not have been subjected to meaningful impeachment by these admissions is an unreasonable determination of the facts and unworthy of credit.

As noted above, the State responds that the additional evidence submitted in support of Flores's claim in federal court renders the claim unexhausted. This often repeated fallacy, that Flores is prohibited from buttressing his claim in federal court, has been readily rejected by other reviewing courts and is not well taken here, as set out above. At the State level, Flores demonstrated Lynch's admitted lack of qualification and has done no more than buttress that claim here.

III.

Hypnosis Claim

Respondent claims that improperly enhanced memory does not violate Flores's constitutional rights. To the contrary, improperly suggestive hypnotic testimony is, indeed, violative of Flores's constitutional rights. See *Rock v. Arkansas*, 483 U.S. 44 (1987). As a rule, the credibility of recall stimulated by hypnosis depends upon the reliability of the scientific procedure used. If the procedure is not capable of yielding reasonably reliable results, then its probative value may be outweighed by

---

[1] Flores does not concede that the prosecution was ignorant of Lynch's problems.

the risks entailed in its use in a criminal trial. *Commonwealth v. Vitello*, 376 Mass. 426, 381 N.E.2d 582, 592-94 (1978) (analyzing policy reasons for excluding polygraph results). "When hypnosis results in an eyewitness identification of the defendant, for example, the defendant is clearly prejudiced if there is not even a reasonable likelihood that the witness' memory was accurately revived." *State v. Hurd,* 86 N.J. 525, 536-537, 432 A.2d 86, 91 - 92 (N.J., 1981)

More importantly, the witness's honestly held belief in the accuracy of his post-hypnotic recollections makes efforts to question any pre-hypnotic doubts or discrepancies equally difficult. As the Fifth Circuit has noted, a witness, after hypnosis, may have an unshakable subjective conviction that gives his account on the witness stand the imprimatur of absolute confidence. Indeed, in a criminal trial, the witness's resultant undue confidence would violate the defendant's constitutional right to confront and cross-examine adverse witnesses, for an absolute conviction in the accuracy of his memory might make it "impossible to cross-examine [the] witness in any meaningful way." *United States v. Valdez,* 722 F.2d 1196, 1202 (5th Cir.1984), *quoting State v. Mack,* 292 N.W.2d 764, 769 (Minn.1980). *Compare Clay v. Vose,* 771 F.2d 1 (1st Cir. 1985) at 4-5; *United States v. Charles,* 561 F.Supp. 694 (S.D. Tex. 1983); *Wicker v. McCotter,* 783 F.2d 487, 493 (5th Cir. 1986); *Commonwealth v. Kater,* 388 Mass. 519, 528, 447 N.E.2d 1190, 1197 (1983); *People v. Shirley,* 641 P.2d 775, 803 (Cal. 1982), *cert. denied,* 459 U.S. 860,(1982); *Commonwealth v. Nazarovitch,,* 436 A.2d 170, 174 (1981); *State v. Mena,* 624 P.2d 1292 (Az. 1981); *People v. Gonzales,,* 310 N.W.2d 306, 313-14 (Mich. 1981), *aff'd.* 329 N.W.2d 743 (Mich. 1982).

As to the merits of the hypnosis claim, once again, Respondent misapprehends Flores's argument. Flores has not and did not argue that the State court erred in utilizing the *Zani*[2] standard.

[2]758 SW2d 233 (Tex.Crim.App. 1990)

The trial court's determination of the facts considering the manner in which the witness, Bargainer, was hypnotized was unreasonable. A review of the documents and evidence provided in the State court conclusively establishes that the hypnosis session was unduly suggestive. (See writ at page 48.) Bargainer was much surer in her identification post-hypnosis.

Although the answer dismissively asserts that the State court findings regarding the hypnosis were reasonable, (p. 49 footnote 25) the answer fails to otherwise explain why the determinations were reasonable or to rebut the specific factual references cited by Flores and derived from the hypnosis tape. The affidavit of Edward Geiselman serves as a synopsis of the State record adequate to show the deficiencies in the techniques utilized in the hypnosis session. Far from creating an unexhausted claim, this affidavit clearly summarizes the testimony and shows why Bargainer's testimony is unreliable, why it deprived Flores of a fair trial and why the factual determination of this claim at the State level is absolutely an unreasonable reading of the record.

III.

## The 10-12 Rule

Respondent claims that Flores's complaint is procedurally barred under the *Gardner*[3] rule. Although part of the issue was not raised on direct appeal, it was raised by State habeas counsel. However, the *Gardner* rule should not operate as a procedural bar in this case. Unlike non-capital appeals in the State of Texas, capital appeals are heard exclusively by the Texas Court of Appeals. That same court decides capital writs of habeas corpus. (Art. 11.071 applications). Therefore, when a capital claim is presented, it is decided in the first instance by the Court of Criminal Appeals,

---

[3]*Ex Parte Gardner*, 959 SW2d 189(Tex.Crim.App. 1996)

whether by writ or by direct appeals. When the Texas Court of Appeals makes a determination concerning a claim, that decision is considered final whether made on appeal or by writ. Moreover, once an issue is presented on direct appeal, the Court of Criminal Appeals routinely refuses to consider the issue in an 11.071 proceeding, noting that the claim has already been decided on direct appeal. See *Ex parte Acosta,* 672 S.W.2d 470, 472 (Tex.Crim.App. 1984).

The purpose of the *Gardner* rule is to prevent untimely and repetitive litigation of issues. *Gardner* did not involve the type of simultaneous filings required under the Texas capital scheme and predated AEDPA. The type of belated issue submission contemplated by the *Gardner* rule is not now possible in Texas state capital litigation since the writ attorney is appointed simultaneously with the appellate attorney. The 10-12 claim was presented to, and finally determined by, the highest court in the state, which is all that is required for review under 28 U.S.C. 2254(b)(1). Moreover, while noting the procedural bar, the Texas Court of Criminal Appeals also determined the merits of the 10-12 claim, which is a reviewable decision. For these reasons, this claim should be considered ripe for federal review.

IV.

The Absence of Qualified Writ Counsel Issue

Article 11.071 provides Texas capital defendants with the right to counsel during post-conviction proceedings. A plain reading of the statutory language confirms that this right is not merely one regarding paper credentials. Despite the Texas Court of Criminal Appeals' holding in *Ex Parte Graves,*[4] the actual language of the statute provides more than simply "a pulse and a bar card". The plain language of the statute provides Texas capital defendants with a statutory right to

---

[4]70 SW3d 103(Tex.Crim.App. 2002)

-8-

investigation of their habeas claims.  In section 3, the statute mandates that "[o]n appointment, counsel SHALL investigate expeditiously, before and after the appellate record is filed in the court of criminal appeals, the factual and legal grounds for the filing of an application for a writ of habeas corpus."  This right to investigation during State habeas proceedings is further buttressed by the language in section 2 that provides "[a]n applicant shall be represented by competent counsel. . . ."  Thus, in reading the plain language of the statute, it appears that the Texas Legislature has provided capital defendants with the right to "competent counsel" which includes a statutory right to investigation of his or her habeas claims.

Charles Flores neither received his statutory right to counsel during habeas proceedings nor his right to have his claims investigated, expeditiously or otherwise.  Where a State statute provides a right, due process is implicated.  Hence, Charles Flores is entitled, under due process, to both the right to competent counsel and the right to have his State habeas claims "investigate[d] expeditiously, before and after the appellate record is filed in the court of the criminal appeals, the factual and legal grounds" for the filing of his State habeas petition. The evidence in this case is replete with errors and omissions committed by all those connected with Flores's State habeas petition. The evidence in this case demonstrates that the appointing judge in the habeas proceedings was acutely aware of counsel's deficiencies and threatened to hold one of Flores's attorneys in contempt if he continued to fail to even pick up the court record.  While there is no freestanding Constitutional right to counsel in this country, there is a due process right to receive those statutory guarantees provided by State legislatures.  In Texas, the Texas Legislature provided individuals, like Charles Flores, with both the right to competent counsel and the right to have his claims properly and expeditiously investigated. Flores received neither.

A review of Respondent's answer demonstrates that virtually all of Flores's claims could be deemed as barred or defaulted due to the complete lack of investigation and presentation by writ counsel. Indeed, if Respondent is correct, Flores lacks even one properly developed claim. The arguments made by Respondent do not demonstrate that Flores received a fair trial; instead they deem that State writ counsel did not know how to develop or argue even obvious errors.

For these reasons, this Court should grant Flores's habeas request and, at a minimum, permit him to return to the State court level to have his claims heard on the merits rather than discarded prematurely under a procedural default rule that ignores the realities of this case. Charles Flores did everything in his power to ensure that he had viable claims preserved for consideration at the Federal level. The only reason these claims were not preserved is due to the numerous known failures of habeas counsel. Article 11.071 -- and, accordingly, the federal due process clause -- requires more.

<u>Conclusion</u>

Wherefore, premises considered, Petitioner prays that this Honorable Court will grant all the requested relief set out in the original §2254 Application for Relief.

Respectfully Submitted,

_____
BRUCE ANTON
TSB #01274700
2301 Cedar Springs Rd., Suite 400
Dallas, Texas 75201
214/468-8100
214/468-8104 (fax)

ATTORNEY FOR PETITIONER

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the above entitled Petitioner's Reply To

Respondent's Answer was mailed to Ms. Ana Jordan, Assistant Attorney General, P.O. Box 12548,

Austin, Texas, on this the _____ day of December 2008.

BRUCE ANTON