IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CHARLES DON FLORES                §
                                  §
          Petitioner,             §
                                  §
VS.                               §
                                  §     NO. 3-07-CV-0413-M-BD
RICK THALER, Director             §
Texas Department of Criminal Justice, §
Correctional Institutions Division §
                                  §
          Respondent.             §

## FINDINGS AND RECOMMENDATION OF THE
## UNITED STATES MAGISTRATE JUDGE

Petitioner Charles Don Flores, a Texas death row inmate, has filed an application for writ of

habeas corpus pursuant to 28 U.S.C. § 2254.  For the reasons stated herein, the application should

be denied.

I.

A Dallas County jury convicted petitioner of capital murder in connection with the shooting

death of Elizabeth Black while in the course of committing robbery and burglary.[1]  Based on the

jury's answers to special issues on punishment, the trial court sentenced petitioner to death.  His

conviction and sentence were affirmed on direct appeal.  *Flores v. State*, No. 73,463 (Tex. Crim.

App. Nov. 7, 2001).  Petitioner also filed an application for state post-conviction relief.  The

application was denied without written order.  *Ex parte Flores*, No. WR-64,654-01, 2006 WL

---

[1]  Under Texas law, a person commits capital murder if he intentionally commits the murder in the course of committing or attempting to commit certain felony offenses, including robbery and burglary. *See* TEX. PENAL CODE ANN. § 19.03(a)(2) (Vernon 1994).

-1-

2706773 (Tex. Crim. App. Sept. 20, 2006), *cert. denied*, 128 S.Ct. 292 (2007). Petitioner then filed this action in federal district court.

II.

In four grounds for relief, petitioner contends that: (1) the jury instructions on mitigation were constitutionally defective; (2) the prosecutor failed to disclose known impeachment evidence regarding a key witness; (3) the trial court improperly admitted hypnotically-enhanced eyewitness testimony; and (4) he received ineffective assistance of counsel on state habeas review.

A.

Petitioner first contends that the mitigation instruction given to the jury at the conclusion of the punishment phase of the trial resulted in a "multitude of constitutional violations." (*See* Hab. Pet. at 7). As required by Texas law,[2] the trial court submitted three questions, or "special issues," to the jury on punishment. The first question asked if "there is a probability that the defendant, Charles Don Flores, would commit criminal acts of violence that would constitute a continuing threat to society[.]" (*See* St. App. Tr. at 152). The second question asked if "the defendant, Charles Don Flores, actually caused the death of the deceased, Elizabeth Black, or, if he did not actually cause her death, that he intended to kill Elizabeth Black or another, or anticipated that a human life would be taken[.]" (*Id.* at 152-53). If the jury unanimously answered "yes" to both questions, they were told to answer Special Issue No. 3, which reads:

> Taking into consideration all of the evidence, including the
> circumstances of the offense, the defendant's character and

---

[2] The instructions and special issues submitted to the jury track the language of Tex. Code Crim. Proc. Ann. art 37.071, § 2 (Vernon 1993).

-2-

> background, and the personal moral culpability of the defendant, is there a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed?

(*Id.* at 153-54).  In connection with this special issue, the trial court instructed the jury:

> There is no presumption regarding the answer to special issue 3 and neither the State nor the defense has a burden of proof on it.  In answering this issue, the jury shall consider mitigating evidence to be evidence that a juror might regard as reducing the defendant's moral blameworthiness.
>
> The jury shall answer special issue number 3 "yes" or "no."  Only by unanimous verdict may the jury answer "no" to this special issue and it may not be answered "yes" unless ten (10) or more jurors agree. Jurors need not agree on what particular evidence supports a "yes" finding.

(*Id.* at 147-48).  According to petitioner, the mitigation issue and accompanying instruction are constitutionally defective because:  (1) the so-called "10-12 Rule" of the Texas capital sentencing scheme prevents the jury from giving due consideration to mitigating evidence and undermines their sense of responsibility for imposing a death sentence; (2) the state is not required to prove beyond a reasonable doubt that the defendant should be sentenced to death; and (3) the mitigation instruction is excessively vague, thereby resulting in arbitrary and capricious sentencing patterns.

Respondent counters that all these claims are procedurally barred from federal habeas review. With respect to petitioner's claims involving the "10-12 Rule," respondent points out that the state habeas court denied relief on the ground that petitioner could have, but did not, raise those claims on direct appeal.  Respondent argues that petitioner's other challenges to the jury instructions are completely unexhausted and cannot be raised for the first time in a section 2254 proceeding.

1.

A federal court may not consider the merits of a habeas claim if a state court has denied relief due to a procedural default. *See Sawyer v. Whitley*, 505 U.S. 333, 338, 112 S.Ct. 2514, 2518, 120 L.Ed.2d 269 (1992). The state court opinion must contain a "plain statement" that its decision rests on adequate and independent state grounds. *See Harris v. Reed*, 489 U.S. 255, 261-62, 109 S.Ct 1038, 1042-43, 103 L.Ed.2d 308 (1989); *Smith v. Collins*, 977 F.2d 951, 955 (5th Cir. 1992), *cert. denied*, 114 S.Ct. 97 (1993). To be an adequate ground for denying relief, the state procedural rule must be strictly or regularly applied to similar claims. *See Hathorn v. Lovorn*, 457 U.S. 255, 262-63, 102 S.Ct. 2421, 2426, 72 L.Ed.2d 824 (1982); *Johnson v. Puckett*, 176 F.3d 809, 824 (5th Cir. 1999). Under Texas law, claims that could have been raised on direct appeal, but are presented for the first time on state collateral review, are procedurally defaulted. *Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1996). The Fifth Circuit has held that "the *Gardner* rule set forth an adequate state ground capable of barring federal habeas review." *Aguilar v. Dretke*, 428 F.3d 526, 535 (5th Cir. 2005), *cert. denied*, 126 S.Ct. 2059 (2006), *quoting Busby v. Dretke*, 359 F.3d 708, 719 (5th Cir.), *cert. denied*, 124 S.Ct. 2812 (2004).

The state habeas court rejected petitioner's claims involving the "10-12 Rule" because they were not raised on direct appeal as required by *Gardner*. *See Ex parte Flores*, WR-64,654-01, Tr. at 698-99, ¶¶ 30-33. In his reply, petitioner argues that the *Gardner* rule should not operate as a bar in death penalty cases because, unlike most criminal appeals, capital appeals are decided by the Texas Court of Criminal Appeals -- the same court that considers applications for state post-conviction relief. (*See* Pet. Reply at 7-8). Not surprisingly, petitioner cites no authority carving out an exception to *Gardner* in capital cases. Indeed, the Fifth Circuit has consistently applied the

*Gardner* rule in death penalty cases to bar federal habeas review of claims that were raised for the first time in a state writ of habeas corpus. *See, e.g. Brewer v. Quarterman*, 466 F.3d 344, 347 (5th Cir. 2006), *cert. denied*, 128 S.Ct. 63 (2007); *Aguilar*, 428 F.3d at 535; *Busby*, 359 F.3d at 718. Although a federal court may consider procedurally defaulted claims if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice," *see Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991), petitioner makes no attempt to satisfy these requirements.[3] Consequently, his claims involving the "10-12 Rule" are procedurally barred from federal habeas review.

2.

A prisoner must fully exhaust state remedies before seeking habeas relief in federal court. *See* 28 U.S.C. § 2254(b)(1)(A). This entails submitting the factual and legal basis of any claim to the highest available state court for review in a procedurally correct manner. *See Satterwhite v. Lynaugh*, 886 F.2d 90, 92-93 (5th Cir.1989). In Texas, a prisoner must present his claims to the Texas Court of Criminal Appeals in a petition for discretionary review or an application for writ of habeas corpus. *See Bautista v. McCotter*, 793 F.2d 109, 110 (5th Cir.1986). While a federal court has limited discretion to stay a habeas petition and hold it in abeyance so a prisoner can return to state court to exhaust previously unexhausted claims, *see Rhines v. Weber*, 544 U.S. 269, 275, 125 S.Ct. 1528, 1533-34, 161 L.Ed.2d 440 (2005), Texas law prohibits a prisoner from filing a second

---

[3] It would be difficult, if not impossible, for petitioner to demonstrate "actual prejudice" or "a fundamental miscarriage of justice" because his constitutional challenges to the "10-12 Rule" are foreclosed by Fifth Circuit precedent. *See, e.g. Alexander v. Johnson*, 211 F.3d 895, 897 (5th Cir. 2000); *Hughes v. Johnson*, 191 F.3d 607, 625-26 (5th Cir. 1999), *cert. denied*, 120 S.Ct. 1003 (2000); *Jacobs v. Scott*, 31 F.3d 1319, 1328-29 (5th Cir. 1994), *cert. denied*, 115 S.Ct. 711 (1995).

or successive application for post-conviction relief if the grounds stated therein could have been, but were not, raised in a prior state writ. *See* TEX. CODE CRIM. PROC. ANN. art. 11.071, § 5(a) (Vernon 2007). Under this statute:

> If a subsequent application for a writ of habeas corpus is filed after filing an initial application, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that:
>
> (1)    the current claims and issues have not been and could not have been presented previously in a timely initial application or in a previously considered application filed under this article or Article 11.07 because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application;
>
> (2)    by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt; or
>
> (3)    by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury in the applicant's trial under Article 37.071, 37.0711, or 37.072.

*Id.* Unexhausted claims are procedurally barred from federal habeas review if the state court would likely dismiss such claims if made in a successive writ under article 11.071, § 5. *See Coleman*, 111 S.Ct. at 2557 n.1 (procedural default occurs when prisoner fails to exhaust available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred").

Petitioner did not raise his other claims involving the jury instructions on punishment either on direct appeal or state collateral review. The court finds that a Texas court, presented with these claims in a successive habeas petition, would likely find them barred under article 11.071, § 5. A

*Rhines*-stay is not warranted because petitioner's claims are "plainly meritless." *Rhines*, 125 S.Ct. at 1535.  No Supreme Court or Fifth Circuit precedent requires the state to prove the absence of mitigating circumstances beyond a reasonable doubt.  *See Rowell v. Dretke*, 398 F.3d 370, 378 (5th Cir.), *cert. denied*, 126 S.Ct. 103 (2005).  Nor does petitioner cite any controlling authority to support his argument that the mitigation instruction was impermissibly vague and that, cumulatively, the jury instructions on punishment were arbitrary and capricious.

Even it these claims were not plainly meritless, they would be barred by the rule in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).  In *Teague,* the Supreme Court held that, except in very limited circumstances, a federal habeas court cannot retroactively apply a new rule of criminal procedure. The Court explained that:

> a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government.  To put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final.

*Teague*, 109 S.Ct. at 1070 (emphasis in original).  The AEDPA effectively codified the *Teague* non-retroactivity rule "such that federal habeas courts must deny relief that is contingent upon a rule of law not clearly established at the time the state conviction becomes final." *Peterson v. Cain,* 302 F.3d 508, 511 (5th Cir. 2002), *cert. denied*, 123 S.Ct. 886 (2003), *citing Williams v. Taylor*, 529 U.S. 362, 380-81, 120 S.Ct. 1495, 1506-07, 146 L.Ed.2d 389 (2000).  Because the Supreme Court has never held that the state must prove the absence of mitigating circumstances beyond a reasonable doubt, or that the mitigation instruction in Texas capital cases is unconstitutionally vague, the court need not consider these unexhausted claims or stay this case to give petitioner an opportunity to exhaust his state remedies.

B.

Petitioner also challenges his capital murder conviction and death sentence on three other grounds: (1) the prosecutor failed to disclose known impeachment evidence regarding a key witness; (2) the trial court improperly admitted hypnotically-enhanced eyewitness testimony; and (3) he received ineffective assistance of counsel on state habeas review.[4]

1.

The standard of review in federal habeas cases is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* Pub.L. 104-132, 110 Stat. 1214 (1996). Where a state court has already rejected the claims raised by petitioner, a federal court may grant habeas relief only if the state court adjudication:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby*, 359 F.3d at 713, *citing Williams*, 120 S.Ct. at 1519-20. A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal

---

[4] Respondent contends that petitioner either failed to fully develop the factual and legal basis of these claims on direct appeal or state collateral review, or did not raise the claims at all in state court. Because petitioner is not entitled to habeas relief in any event, the court will consider these claims on the merits. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 120 S.Ct. at 1523; *see also Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). Factual determinations made by the state court are presumed to be correct and are unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Threadgill v. Quarterman*, No. 3-05-CV-2217-D, 2009 WL 2448499 at *5 (N.D. Tex. Aug. 10, 2009) (citing cases), *appeal filed*, Sept. 8, 2009 (No. 09-70024). This presumption applies not only to explicit findings of fact, but "it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Threadgill*, 2009 WL 2448499 at *5, *quoting Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001), *cert. denied*, 123 S.Ct. 106 (2002); *see also Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 774, 79 USLW 4030 (2011) ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.").

On federal habeas review, the district court reviews "only the ultimate decision of the state court, and not the specific contents of its reasoning or opinion." *Blanton v. Quarterman*, 543 F.3d 230, 236 (5th Cir. 2008), *cert. denied*, 129 S.Ct. 2383 (2009). When the Texas Court of Criminal Appeals denies post-conviction relief without written order on findings of the trial court, the federal habeas court "(1) assumes that the state court applied the proper 'clearly established Federal law'; and (2) then determines whether its decision was 'contrary to' or 'an objectively unreasonable application of that law." *Threadgill*, 2009 WL 2448499 at *5, *quoting Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003), *cert. denied*, 124 S.Ct. 1156 (2004).

2.

Petitioner contends that the prosecutor failed to disclose known impeachment evidence regarding a key witness in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). At issue is the mental health history of Charles Linch, a trace evidence analyst who performed a fiber analysis on the alleged murder weapon and testified that debris found in the barrel of the gun was microscopically consistent with potato grains. (*See* SF-36 at 210-15). The prosecutor relied on this testimony to argue that potatoes were used as silencers, thereby suggesting that petitioner and his accomplice anticipated the murder. (*See* SF-37 at 64, 93, 94, 97, 101-02, 103, 105; SF-41 at 48, 52, 87). According to petitioner, Linch had a history of chronic depression, alcoholism, and related employment problems that "weighed heavily on his credibility and reliability as an expert witness." (*See* Hab. Pet. at 40).

The prosecution has a duty to disclose all evidence favorable to the defendant in a criminal case. *See Brady*, 83 S.Ct. at 1196-97. This duty extends to impeachment evidence. *See United States v. Holley*, 23 F.3d 902, 914 (5th Cir.), *cert. denied*, 115 S.Ct. 635 (1994). To establish a *Brady* violation, a habeas petitioner must prove: (1) that the evidence was favorable to the accused; (2) that the evidence was suppressed by the state, either willfully or inadvertently; and (3) that prejudice ensued. *See Banks v. Dretke*, 540 U.S. 668, 691, 124 S.Ct. 1256, 1272, 157 L.Ed.2d 1166 (2004), *citing Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999). "Before a *Brady* claim can arise, [petitioner] must show that the prosecution team had access to the evidence." *Summers v. Dretke*, 431 F.3d 861, 874 (5th Cir. 2005), *cert. denied*, 127 S.Ct. 353 (2006). Here, petitioner alleges that the state prosecutors either knew or should have known that Linch had a history of chronic depression and alcoholism brought on by his employment at the

-10-

Southwest Institute of Forensic Science ("SWIFS"). (*See* Hab. Pet. at 40-41). These mental health problems reached a critical point in 1994, when Linch was hospitalized for two weeks and placed on suicide watch. (*See* Hab. Pet. App., Exh. 1). After Linch resumed drinking in 1997, he was hospitalized for another 13 days and prescribed Librium for depression. (*Id.*). Petitioner also points to a memo allegedly written by Linch in April 1998 -- approximately one year before trial -- wherein Linch complained to his supervisors about his lack of training in certain areas, including fiber analysis. (*See id.*, Exh. 2 at 25-30). Sometime after that memo was written, Linch was temporarily suspended from doing any fiber analysis at SWIFS. (*Id.*, Exh. 2 at 31-32). Petitioner maintains that this evidence, if disclosed, could have been used to impeach Linch's qualifications and his credibility as an expert.

Even if this evidence qualified as *Brady* material, the state habeas court determined that the prosecutors assigned to the case had no knowledge of Linch's hospitalizations until more than a year after petitioner's trial. *See Ex parte Flores*, WR-64,654-01, Tr. at 745-46, ¶¶ 216-17. With respect to petitioner's argument that the state had a duty to learn of Linch's mental health history, or that knowledge of this evidence should somehow be imputed to the prosecutors, the state court found:

> The Court acknowledges that, under certain circumstances, the prosecutor may have a duty to learn of any favorable evidence known to others acting on the government's behalf in the case, such as the police. The disclosure rule in *Brady* does not draw a distinction between different agencies under the same government, but rather focuses on the "prosecution team," which includes both investigative and prosecutorial personnel.
>
> The Court finds, however, that Applicant has not presented any evidence that Linch, in his capacity as a trace evidence analyst at the Southwest Institute for Forensic Science, functions as law enforcement personnel. Applicant has presented no evidence that SWIFS' services are available only to the District Attorney's office or

to law enforcement agencies. The Court concludes that Applicant has failed to prove that Linch is a part of the "prosecution team."

The Court concludes, therefore, that the prosecutor in this case cannot be imputed with knowledge of Linch's mental health history because Linch was not part of the prosecution team.

*Id.* at 746-47, ¶¶ 219-21 (internal citations omitted). *See also Avila v. Quarterman*, 560 F.3d 299, 307-09 (5th Cir.), *cert. denied* 130 S.Ct. 536 (2009) (holding that pathologist was not part of prosecution team because his role was limited to testifying within area of expertise). Petitioner has failed to rebut this finding by clear and convincing evidence. His argument that another Dallas County prosecutor, who did not participate in this case, may have learned about Linch's mental health problems from a friend who worked at the hospital is both unavailing and unpersuasive. Equally unavailing is petitioner's argument about the Linch memo. There is absolutely no evidence that the prosecution team knew about the memo at the time of petitioner's trial. While the internal memos may have been written in April 1998, they publicly surfaced more than seven years later in a different case tried in a different county. This ground for relief should be overruled.

3.

Next, petitioner complains that the trial court improperly admitted the hypnotically-enhanced identification testimony of Jill Bargainer in violation of his Fourteenth Amendment right to due process and his Sixth Amendment right to confrontation. In a hearing held outside the presence of the jury, Bargainer, a neighbor of the victim, testified that she went to the Farmers Branch Police Station on the morning of the murder and told the police she had seen two men getting out of a Volkswagen in front of the victim's home. (*See* SF-35 at 154-61). Bargainer described the two men and subsequently identified Richard Childs from two photographic lineups as the driver. (*Id.* at 154-

55).  Several days later, Bargainer underwent hypnosis.  (*Id.* at 155; SF-37 at 88-91).  Following the

hearing, the prosecutor informed the trial court and defense counsel that after seeing petitioner in the

courtroom, Bargainer was prepared to identify him as the passenger in the car, thereby placing him

at the murder scene.  (SF-36 at 15-16, 85-86).  The next day, the trial court conducted a *Zani* hearing

to determine whether Bargainer's hypnotically-induced identification testimony was admissible.[5]

(*Id.* at 12-116).  At this hearing, Bargainer testified that she -- not the police or the prosecution --

requested hypnosis.  (*Id.* at 31, 89, 100).  Officer Alfredo Serna, a certified hypnotist, conducted the

session, which was videotaped by Investigator Jerry Baker.  (*Id.* at 18-19, 36-37).  Neither officer

was aware that petitioner had become a potential suspect in the murder.  (*Id.* at 20-21, 30-31, 37-38,

56-57).  Serna and another expert, George Mount, testified that all proper procedures were followed

during the hypnosis session.  (*Id.* at 36-50, 60-73, 75-79, 81).  Bargainer testified that while the

hypnosis made her feel more relaxed, it did not "firm up" her impression of the passenger.  (*Id.* at

101).  Although Bargainer admitted that she might have seen photographs of petitioner in the past,

she did not look at the newspaper nor had she seen a picture of petitioner during the trial.  (*Id.* at 107-

08).  Bargainer said that she understood the seriousness of the situation and was positive in her

identification.  (*Id.* at 108-09).

At the conclusion of the *Zani* hearing, defense counsel moved to suppress Bargainer's

identification testimony.  The motion was denied.  (*Id.* at 117-18).  In her testimony before the jury,

Bargainer unequivocally identified petitioner as the passenger in the Volkswagen who entered the

---

[5] In *Zani*, the Texas Court of Criminal Appeals held that the proponent of hypnotically refreshed testimony must demonstrate, by clear and convincing evidence, that the testimony is trustworthy. *Zani v. State*, 758 S.W.2d 233, 243 (Tex. Crim. App. 1988).  To admit the evidence, the court must find, from a totality of circumstances, that hypnosis "neither rendered the witness' posthypnotic memory untrustworthy nor substantially impaired the ability of the opponent fairly to test the witness' recall by cross-examination[.]" *Id.* at 244.

victim's home. (*Id.* at 283, 294-95). On state collateral review, the same judge who presided over

petitioner's trial found that the hypnosis session was legally proper and satisfied the *Zani*

requirements. *Ex parte Flores*, WR-64,654-01, Tr. at 738, ¶ 188. The state habeas judge adopted

and reaffirmed the findings he previously dictated into the record:

> [T]he Court finds that Officer Alfredo Serna was a qualified forensic
> hypnotist; that Farmers Branch investigators that were involved in the
> case and in the hypnotic -- or hypnosis session had no photograph of
> Mr. Flores and no description of Mr. Flores at that time which they
> could impart to Ms. Barganier.
>
> The Court has viewed the video and saw nothing that it believed was
> subjective, either verbal or nonverbal, nor any cues to Ms. Bargainer
> about her identification.
>
> The hypnotist merely inquired whether she could describe the two
> persons who had gotten out of the Volkswagen, and she had very
> little. In fact, although it's obvious that there was a hypnosis session,
> whether you could call her hypnotically refreshed -- her testimony
> hypnotically refreshed is a question.
>
> I noticed no refreshment beyond perhaps the eye color, and I believe
> she had previously stated that they were dark eyes, and it was
> compatible even with that.
>
> The real issue here is whether her in-court identification is
> trustworthy or not. And if it is not trustworthy by reason of the
> hypnosis, then obviously it could not be admissible.
>
> There is ample corroboration of the fact that the Defendant was the
> passenger in the Volkswagen, all which was just enumerated by the
> Prosecutor.   The Court finds that under the totality of the
> circumstances, that there is clear and convincing evidence that the
> hypnosis undergone by Ms. Bargainer did not render her eyewitness --
> in-Court eyewitness identification of the Defendant untrustworthy[.]

*Id.*, Tr. at 738-39, ¶ 189, *citing* SF-36 at 117-18.

In an attempt to rebut these findings, petitioner relies on the affidavit of Dr. R. Edward Geiselman, an expert in eyewitness psychology, who concludes that "the forensic interview session *might* have caused and otherwise affected the in-court identification of Charles Flores by eyewitness Jill Bargainer." (*See* Hab. Pet. App., Exh. 3 at 5) (emphasis added).  According to Dr. Geiselman, Bargainer's identification testimony was untrustworthy and unduly suggestive because the interviewer told her, while under hypnosis, that "[y]ou might find yourself able to recall other things as time goes by." (*Id.* at 4-5).  Even if the court considers the Geiselman affidavit, which was never presented to the state habeas court,[6] it does not overcome the presumption of correctness attached to the state court findings.  This ground for relief should be overruled.

4.

Finally, petitioner contends that he received ineffective assistance of counsel on state habeas review.  It is well-settled that "[t]here is no constitutional right to an attorney in state postconviction proceedings," and "a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *See Coleman*, 111 S.Ct. at 2566.  Although petitioner has a statutory right under Texas law to be represented by "competent counsel" on state habeas review, *see* TEX. CODE CRIM. PROC. ANN. art. 11.071, § 2(a) (Vernon 2005), the performance of state habeas counsel is not judged by Sixth Amendment standards. *See Martinez v. Johnson*, 255 F.3d 229, 240-41 (5th Cir. 2001), *cert. denied*, 122 S.Ct. 1175 (2002).  Nor does this statutory right to counsel give rise to a federal due process claim. *See Pennsylvania v. Finley*, 481 U.S. 551, 558, 107 S.Ct. 1990, 1995, 95 L.Ed.2d 539 (1987).  This ground for relief should be overruled.

---

[6] Although a federal habeas petitioner may rely on affidavits that were not presented on state collateral review, the affidavit cannot present new factual allegations and must supplement, as opposed to fundamentally alter, claims presented to the state court. *See Smith v. Quarterman*, 515 F.3d 392, 400 (5th Cir. 2008), *citing Morris v. Dretke*, 379 F.3d 199, 204-05 (5th Cir. 2004).

## **RECOMMENDATION**

Petitioner's application for writ of habeas corpus should be denied.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED:  March 3, 2011.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE