IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **CHARLES DON FLORES** | § | |
| *Petitioner* | § | |
| | § | No. 3:07-cv-413-M-BN |
| v. | § | |
| | § | (Death penalty case) |
| **WILLIAM STEPHENS**, Director | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional Institutions | § | |
| Division | § | |
| *Respondent* | § | |

## SUPPLEMENTAL BRIEF REGARDING *TREVINO*

This Court ordered briefing as to how *Trevino v. Thaler*, 133 S.Ct. 1911 (2013), impacted this case. Petitioner now respectfully urges this Court that *Trevino* excuses the procedural default of Petitioner's ineffective assistance of trial counsel claims. Additionally, as to whether the state court should be given first opportunity to address the merits of such claims, Petitioner requests this Court to withhold determination until the Fifth Circuit has decided the issue on remand in *Trevino*. If this Court nonetheless decides to preemptively evaluate the issue, however, Petitioner urges this Court that the proper course of action is remand to the state court for consideration in the first instance. Finally,

if this Court should nonetheless prefer to consider in the first instance Petitioner's claims, Petitioner respectfully requests he be allowed to develop evidence supporting his claims.

## I.   Background

Petitioner was convicted in March 1999 of capital murder and sentenced to death. *See* TEX. PEN. CODE § 19.03(a). After appointment of appellate counsel, Petitioner's conviction and sentence were affirmed on direct appeal to the Texas Court of Criminal Appeals. *Flores v. State*, AP-73,463 (Tex. Crim. App. 2001). His application for state post-conviction relief, drafted by other counsel, was denied on the findings of the trial court. *Ex parte Flores*, WR–64654–01, 2006 WL 2706773 (Tex. Crim. App. Sept. 20, 2006). In that application, Petitioner's appointed counsel argued that Petitioner received ineffective assistance of trial counsel, but on grounds unrelated to Petitioner's current claims.

Represented by present counsel, Petitioner then filed on March 24, 2008, a petition in the United States District Court of the Northern District of Texas for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner argued that his state habeas counsel was ineffective in failing to argue that his trial counsel was ineffective for abandoning his

*Batson* objection. The magistrate judge's findings and recommendation denying relief were made on March 3, 2011. *Flores v. Thaler*, 3-07-CV-0413-M-BD, 2011 WL 7102282 (N.D. Tex. March 3, 2011).

On August 10, 2011, Petitioner filed a motion requesting this Court to withhold its determination until the Supreme Court announced its opinions in several pending cases, most notably *Martinez v. Ryan*, 132 S.Ct. 1309 (2012). Seven months later, but before this Court had yet acted on the motion, the Supreme Court announced its decision in *Martinez*. In that case, the state-convicted defendant argued in his federal application for a writ of habeas corpus that his previous state habeas lawyer should have raised, but did not raise, his claim of ineffective assistance of trial counsel during state collateral review proceedings. 132 S.Ct., at 1314–1315. He added that this failure, itself amounting to ineffective assistance, was the cause of, and ought to excuse, his procedural default of the ineffective assistance of trial counsel claims. *Id*. The Supreme Court agreed, holding that a defendant's procedural default was excused where: (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel

3

during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] … be raised in an initial-review collateral proceeding," *Id.* at 1318–1319, 1320–1321. The Court was explicit, however, in instructing that its holding applied only to those states where state law expressly require the defendant to raise a claim of ineffective assistance of trial counsel in an initial collateral review proceeding. *Ibid.*

On March 27, 2012, this Court entered an order permitting Petitioner to supplement the briefing of his claims in light of *Martinez*. Petitioner filed his supplemental brief on June 6, 2012, again alleging that his state habeas counsel was ineffective for failing to argue that Petitioner received ineffective assistance of trial counsel because trial counsel (1) "prematurely abandoned" a *Batson* hearing, and also because trial counsel (2) failed to investigate possible mitigation evidence and (3) failed to challenge the improperly admitted hypnosis testimony.

Before consideration of these issues, on January 15, 2013, this Court suspended proceedings until the Supreme Court issued its decision in *Trevino*, 133 S.Ct. 1911. It did so on May 28, 2013, holding that, while Texas law does not expressly require ineffective assistance of counsel claims to be raised in a collateral proceeding, Texas's procedure makes it "'virtually impossible' for appellate counsel to adequately present an ineffective assistance [of trial counsel] claim" on direct review. *Trevino*, 133 S. Ct. at 1915 (quoting *Robinson v. State*, 16 S.W.3d 808, 810–811 (Tex. Crim. App. 2000)). Accordingly, the Supreme Court found that any distinction between Arizona and Texas's procedural system was "a distinction without a difference," and, thus, *Martinez*'s holding applied:

> [A] procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Trevino*, 133 S.Ct. at 1921 (quoting *Martinez*, 132 S.Ct. at 1320).

On June 12, this Court ordered briefing as to how that decision impacted this case, including, but not limited to, the issues of whether:

1.  evidentiary development should be allowed by this Court in connection with the de novo consideration of any

unexhausted claim that may fall within the exception to procedural bar created in *Martinez*; and

2. this Court should further abate these proceedings to allow the petitioner to now present any such claim to the state court in the first instance.

## II.   *Trevino* Applies

Petitioner in this case argued in his supplemental § 2254 brief that his state habeas counsel, though having raised some claims of ineffective assistance of trial counsel, failed to raise three other meritorious claims of ineffective assistance of trial counsel. These claims are not exhausted because they rely on new legal theories or factual claims. *See Anderson v. Johnson*, 338 F.3d 382, 386 (5th Cir. 2003). Accordingly, if these claims of ineffective assistance of trial counsel are "substantial," then Petitioner's case is squarely inline with the factual circumstances that were before the Supreme Court in *Martinez* and *Trevino*, and: (1) Petitioner's trial counsel was ineffective in failing to identify and present them; (2) Petitioner's state habeas counsel was ineffective for failing to recognize and then argue as much; and, accordingly, (3) Petitioner would not be precluded in the district court from now presenting those records and that claim of ineffective assistance of trial counsel to the district court. *Trevino*, 132 S.Ct., at

1320. The only question, then, is whether these claims, are in fact, substantial.

### a. Failure to Conduct *Batson* Hearing

As a result of the State striking minority members from the jury panel, trial counsel for Petitioner requested a *Batson*[1] hearing. The following day, the trial court began to hear evidence supporting Petitioner's claim that the strikes were racially motivated and therefore unconstitutional. For reasons that remain unknown, though, the *Batson* hearing was prematurely abandoned never concluded, and the trial court ultimately failed to rule on the matter.

*Batson* requires the utilization of a three-part analysis: 1) where a defendant establishes a prima facie case of racial discrimination during jury selection, the trial court must demand that the state provide a race neutral reason for exercising their strikes; 2) once the state proffers any race neutral reason, the burden again shifts to the defendant to demonstrate that the reason provided is mere pretext for discrimination; 3) in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful

---

[1] 476 U.S. 79 (1986).

discrimination. *Purkett v. Elem*, 514 U.S. 765, 767–68 (1995). The exclusion of even one venireperson because of race violates the Equal Protection Clause. *See Snyder v. Louisiana*, 552 U.S. 472, 478 (2008).

Here, though the State began to give its reasons for the peremptory strikes, the trial court interrupted the process and recessed the hearing only to never complete it. Such interruption was a clear violation of Petitioner's Sixth Amendment right to trial by an impartial jury. This is a substantial claim of ineffective assistance of trial counsel.

### b. Failing to Investigate Mitigating Evidence

Petitioner additionally suffered extreme prejudice by state habeas counsel's failure to argue that trial counsel was ineffective for failing to investigate mitigating evidence. This failing had far-reaching consequences, as it narrowly constricted the state and federal courts' evaluation of trial counsel's copious failings. Had state habeas counsel properly raised and supported this issue, there is a reasonable probability that an impartial state habeas court would have granted Petitioner's claims.

Competent habeas counsel would have recognized that the most fertile area in capital cases during the last decade has been the failure

to investigate mitigation evidence based on *Williams v. Taylor*, 120 S.Ct. 1495 (2000), *Wiggins v. Smith*, 539 U.S. 510 (2003), and *Rompilla v. Beard*, 545 U.S. 374 (2005). The granting of a failure to investigate claim would have been practically reflexive in light of these cases. Such assembly never occurred in this case because trial counsel made little to no effort to conduct an independent mitigation investigation. Likewise, state habeas counsel failed to conduct such investigation or even address trial counsel's many lapses in this well-recognized and established area.

Federal habeas counsel has placed expert testimony before this Court via the Tussay affidavit, an experienced mitigation expert, who could have provided testimony to the jury that Petitioner's past included classic mitigation factors. This Court should not credit trial counsel with strategic decisions when the record belies such deliberative tactics. Here, the record is devoid of any reasons for trial counsel's abbreviated investigation and failure to adduce mitigating evidence.

It is apparent that the commands of *Strickland* and its progeny were not heeded in this case. Following *Trevino*, Petitioner should be

permitted to raise and pursue these substantial mitigation issues in federal court without suffering any procedural bar to their consideration. But for procedural default, Petitioner would have already presented these claims to this Court for proper consideration. These are quite clearly substantial claims, and, accordingly, they are now ripe for federal review.

### c. Failing to Challenge Inadmissible Hypnosis Testimony

Much of the State's case against Petitioner hinged on Black's neighbor's hypnotically enhanced identification. After objection, the trial court entered findings of fact and conclusions of law that the hypnosis session was conducted properly and that there was no impermissible taint of her identification so the neighbor was permitted to identify Petitioner in open court. (RR36.17-118). This conclusion by the trial court was incorrect.

The attached affidavit of Dr. Geiselman, who reviewed the audio-video recording of the hypnosis session, the neighbor's trial testimony in and outside the presence of the jury, the photo lineup including photos of Petitioner, the briefing on Petitioner's writ and the Court of Criminal Appeals' opinion, shows that the hypnosis session was improperly

suggestive. Dr. Geiselman concluded that the neighbor may have felt compelled to identify Petitioner as a result of the hypnosis interview with "remarkable certainty" when she was ultimately exposed to him in a suggestive courtroom setting because she had previously failed to identify him in a fair photo array. Adding to the untrustworthiness of the neighbor's identification was her trial testimony that revealed that she had seen a picture of Petitioner in the media at some point prior to her exposure to him in court. This was further compounded by the fact that the neighbor was not able to make a positive identification from a fair photo array, which would have still had a carry-over effect in her in-court identification because she was exposed to Petitioner's photo. Such carry-over effects are well recognized in the field of eyewitness psychology. Each of the aforementioned factors likely contributed to the neighbor's high level of confidence in her in-court identification of Petitioner.

As a result, the in-court identification that followed was not trustworthy and was not admissible. This claim has not been fully considered because Petitioner's direct appeal failed to provide the court with an adequate record because state habeas counsel failed to provide

supporting evidence for the claim. Habeas counsel was therefore ineffective for not providing the Court of Criminal Appeals with the proper supporting evidence showing the unduly suggestive nature of the hypnosis session. *Trevino* now requires that this Court fully consider this claim.

## III.   Appropriate Method for Consideration

### a. This Court should wait for the Fifth Circuit to address the issue on remand in *Trevino*

Prior to *Martinez* and *Trevino*, the failings of state habeas counsel would have resulted in Petitioner forfeiting numerous meritorious claims and precluded him from supporting his claims with admissible evidence. While *Martinez* and *Trevino* save Petitioner from state habeas counsel's failings, *Trevino* specifically left it to the Fifth Circuit on remand to determine whether, in such circumstances, the Texas courts should be permitted, in the first instance, to decide the merits of an ineffective-assistance-of-trial-counsel claim. *Id.* at 1921. Though the court has not yet decided that issue, this Court requested briefing on the subject in this case. Accordingly, Petitioner would first urge this Court that the most logical course of action would be to simply withhold

a determination on the issue until the Fifth Circuit announces its determination.

### b. If not, then remand to the state court is the best alternative

If this Court nonetheless determines that it wishes to pre-emptively decide the issue, Petitioner then urges that the only reasonable practice would be to remand this case to the state court for initial consideration. As noted by Respondent in its brief in *Trevino*, "Texas courts… have a proven track record of hearing once-defaulted claims on the merits under appropriate circumstances." (*Trevino* Respondent's Brief at 59, attached) (citing, *e.g., Ex parte Medina*, 361 S.W.3d 633, 642-643 (Tex. Crim. App. 2011); *Ex parte McPherson*, 32 S.W.3d 860, 861 (Tex. Crim. App. 2000)). "Texas has established robust procedures for postconviction review," and "[f]orcing claimants like [Petitioner] to return to state court, and thereby allowing the CCA to adjudicate those claims on the merits, would dilute the strong medicine of granting habeas review on long-defaulted claims." (*Trevino* Respondent's Brief at 54, 59-60) (citing *Harris v. Reed*, 489 U.S. 255, 282 (1989) (Kennedy, J., dissenting)).

Additionally, in the wake of *Trevino*, Respondent has wasted no time in further urging the federal courts to permit its courts to have the first crack at any potentially meritorious trial ineffectiveness claim. One week after *Trevino*, in court requested briefing in *Ibarra v. Thaler*, 687 F.3d 222 (5th Cir. 2012) – "the leading case in [the Fifth] Circuit regarding the inapplicability of *Martinez* to Texas's prisoners" – Respondent asserted its interest in its courts performing the initial review of ineffectiveness claims not previously raised. Respondent argued that, if the Fifth Circuit had "any doubt about the merits of Ibarra's IATC claim, it should not… allow Ibarra to continue litigating in federal court without first forcing him to give the state courts what AEDPA demands – namely, a fair opportunity to adjudicate his IATC claim on the merits." (*See* The Director's Supplemental Briefing Respecting the Petition for Rehearing En Banc at 4, *Ibarra v. Thaler*, No. 11-70031 (5th Cir. June 4, 2013)). As urged by Respondent, its court "should have an opportunity to consider whether to adjudicate Ibarra's IATC claim on the merits now that the decades-old procedural basis for its disposition no longer may be adequate to support its judgment." *Id.* at 5.

Moreover, Respondent advocates that Texas courts must be the first to assess the effectiveness of state habeas counsel: "And to the extent Ibarra wants to use the alleged ineffectiveness of his state habeas counsel ('IASHC') as 'cause' to excuse the default of his IATC claim, he also must exhaust that IASHC claim." *Id.* at 4 (citing *Edwards v. Carpenter*, 529 U.S. 446 (2000)). Even though staying the federal proceedings to allow Mr. Ibarra to exhaust any remaining state court remedies would further delay resolution of the federal proceedings, Respondent explicitly prioritized its interest in state courts conducting the initial review of both habeas and trial counsel's effectiveness ahead of its finality interest:

> as between forcing Ibarra to exhaust [his trial and habeas ineffectiveness issues in state court] and allowing him to complain in federal court about his State-appointed trial lawyer, his state-court trial, his State-appointed state-habeas lawyer, and his four state habeas proceedings – all without giving the State a proper opportunity to adjudicate his claim – exhaustion plainly is the lesser of two evils.

*Id.* at 5. As described by Respondent, "*Trevino* invited the [the State of Texas] to proffer solutions that best reflect the goals of the Antiterrorism and Effective Death Penalty Act, principles of comity and

federalism, and decades' worth of procedural-default and exhaustion-doctrine precedents."

Respondent's briefing in *Trevino*, and in what it hopes will be the leading post-*Trevino* Fifth Circuit case, urges that Texas's interests will be best served if this Court assumes responsibility for reviewing in the first instance whether habeas counsel was ineffective with respect to a trial ineffectiveness claim and, if so, whether trial counsel was ineffective.

Petitioner and the State simply could not agree more.

### c. In the final alternative, this Court should itself consider Petitioner's claims, while allowing for evidentiary development

As discussed above, Petitioner's claims first raised in his supplemental brief in light of *Martinez* are unexhausted. Because these claims are unexhausted due to state habeas counsel's failure to raise them, however, Petitioner is now afforded the opportunity to present these otherwise-barred claims. *See supra.*

First and foremost, Petitioner urges that it is axiomatic that his right to present a claim necessarily permits him to develop both a legal argument and its underlying factual support. A claim, by its very

definition, is an "aggregate of operative *facts* giving rise to a right enforceable by a court." *See* BLACK'S LAW DICTIONARY (9th ed. 2009) (emphasis added). Moreover, any other reading would lead to the absurd result where Petitioners with "substantial" claims of ineffective assistance of counsel – undeveloped through no fault of their own – could plead only legal theories without justifying facts.

The State will no doubt argue that 28 U.S.C. § 2254(e)(2) establishes "stringent conditions" for allowing an evidentiary hearing where a prisoner has failed to develop the factual basis of his claims in state court. But § 2254(e)(2) applies only where an applicant has "failed" to develop the factual basis of a claim in state court. Here, the very fact that Petitioner has demonstrated cause for the lack of exhaustion necessarily means that that he did not "fail" to develop the facts.

### Conclusion

For these reasons, Petitioner respectfully requests this Court to find that, in light of the Supreme Court's decision in *Trevino*, Petitioner's claims of ineffective assistance of trial counsel as alleged in his supplemental briefing are not procedurally barred for lack of

17

exhaustion. Because the Texas state court should first consider this claim, however, Petitioner then respectfully requests this Court to remand this cause to the state court. Finally, if this Court should nonetheless wish to consider Petitioner's claims itself, Petitioner respectfully requests he be allowed to develop evidence supporting his claims.

Respectfully submitted,


/s/ Bruce Anton
_____
Bruce Anton
Texas Bar No. 01274700


/s/ Brett Ordiway
_____
Brett E. Ordiway
Texas Bar No. 24079086

Sorrels, Udashen & Anton
2311 Cedar Springs Road
Suite 250
Dallas, Texas 75201
(214) 468-8100
(214) 468-8104 Fax

Attorneys for Petitioner

## Certificate of Service

I certify that seven (7) copies of the Brief of Appellant were filed with the Court by U.S. Mail, and in electronic format via the ECF system, on the 22nd day of August, 2013. I further certify that an electronic copy of the brief was served on all counsel of record by filing on the ECF System on the same date.

/s/ Bruce Anton

_____

Bruce Anton

## Certificate of Compliance

1. This brief complies with the length limitation set forth in FED. R. APP. P. 32(a)(7)(B)(i) because this brief contains 3,177 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2011 in 14 point Century.

/s/ Bruce Anton

_____

Bruce Anton