UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHARLES DON FLORES, | § | |
| Petitioner, | § | |
| | § | |
| V. | § | Civil Action No. 3:07-CV-0413-M |
| | § | |
| WILLIAM STEPHENS, Director, | § | (Death Penalty Case) |
| Texas Department of Criminal Justice | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

ORDER ACCEPTING AND MODIFYING FINDINGS, CONCLUSIONS, AND
RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE, AND
DENYING A CERTIFICATE OF APPEALABILITY

The United States Magistrate Judge has made findings, conclusions, and a recommendation ("Recommendation," doc. 60) to deny habeas corpus relief in this case. Petitioner Charles Don Flores has filed objections ("Objections," doc. 70), and the District Court has made a *de novo* review of those portions of the Recommendation to which objection was made. The objections are **OVERRULED**, the Court **ACCEPTS** the Recommendation as modified by this order, and **DENIES** Flores's application for a writ of habeas corpus for the reasons that follow.

**I**

This is a petition for a writ of habeas corpus filed under 28 U.S.C. § 2254. Flores is a Texas inmate convicted of capital murder and sentenced to death for shooting Elizabeth Black while committing robbery and burglary in her home on January 29, 1998. In accordance with the jury's answers to the special issues, the 195th Judicial District Court of Dallas County, Texas, sentenced Flores to death on April 1, 1999. Flores's conviction and sentence were affirmed on direct appeal, *Flores v. State*, No. 73,463 (Tex. Crim. App. Nov. 7, 2001). While his direct appeal was pending, Flores filed an application for habeas-corpus relief in the state trial court on September 13, 2000.

(Vol. 1, State Habeas Record ("SHR"), at 2.)  The state trial court issued its findings of fact and conclusions of law on April 12, 2006, that habeas relief be denied.  (2 SHR 688-814.)  Those findings were adopted by the Texas Court of Criminal Appeals ("CCA") on September 20, 2006, *Ex parte Flores*, WR-64,654-01, 2006 WL 2706773, and his petition for a writ of certiorari to the Supreme Court was denied on October 1, 2007.  *Flores v. Texas*, 552 U.S. 884 (2007).

After federal habeas counsel was appointed for Flores, he filed a petition for habeas relief on March 24, 2008 (Pet., doc. 37), and the United States Magistrate Judge made his Recommendation to deny relief on March 3, 2011.  (Rec., doc. 60.)  After an extension was granted, Flores filed his objections (doc. 68) and amended objections (Obj., doc. 70) to the Recommendation.  Subsequently, Flores filed a motion to withhold a determination pending the Supreme Court's consideration of two cases involving the ineffective assistance of state habeas counsel (doc. 73).  Following the Supreme Court's opinion in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), these proceedings were again referred to the United States Magistrate Judge (Order, June 10, 2014, doc. 89), who ordered supplemental briefing (doc. 90).  Based on the supplemental briefing by the parties*,* the Court finds that the referral is no longer needed.  Therefore, the referral is **CANCELLED**, and the Recommendation is **ACCEPTED** as modified by this order.

## II

In his petition for federal habeas relief, Flores presents the following grounds for relief:

(1)     The indictment and jury instructions on the mitigation special issue were constitutionally defective in that (a) the  "10-12 Rule" of the Texas capital sentencing scheme prevents the jury from giving due consideration to mitigating evidence and undermines their sense of responsibility for imposing a death sentence, (b) the state is not required to prove beyond a reasonable doubt that the defendant should be sentenced to death, and (c) the mitigation

instruction is excessively vague, thereby resulting in arbitrary and capricious sentencing patterns;

(2)     The prosecutor failed to disclose known impeachment evidence of the mental illness and employment problems of the State's trace evidence analyst in violation of *Brady v. Maryland*, 373 U.S. 83 (1963);

(3)     Flores was deprived of Due Process and the right of confrontation when the trial court allowed the State to introduce an eyewitness identification from a witness whose recollection had been hypnotically enhanced; and

(4)     Flores was denied the effective assistance of counsel on state habeas review.

Respondent asserts that the third and fourth claim and portions of the first claim are unexhausted, that the first, third and fourth claims are procedurally barred, that the fourth claim is not cognizable on federal habeas review, that the first claim is barred by the nonretroactivity doctrine of *Teague v. Lane*, 489 U.S. 288, 310 (1989), that the Confrontation Clause complaint in the third claim is waived because it is inadequately briefed, and that all of Flores's claims lack merit. The Magistrate Judge recommended that relief be denied on all claims presented. Each of Flores's objections are considered in this *de novo* review of his claims.

## III

Federal habeas review of these claims is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). There are a number of preliminary requirements that must be satisfied before reaching the merits of a claim made in a federal habeas proceeding.

### A. Exhaustion

Under the AEDPA, a federal court may not grant habeas relief on any claim that the state prisoner has not exhausted in the State corrective process available to protect his rights. *See* 28

- 3 -

U.S.C. § 2254(b)(1)(A); *Harrington v. Richter*, 131 S.Ct. 770, 787 (2011).  However, the federal court may deny relief on the merits notwithstanding any failure to exhaust.  *See* 28 U.S.C. § 2254(b)(2); *Miller v. Dretke*, 431 F.3d 241, 245 (5th Cir. 2005).

### B. State-Court Procedural Determinations

If the state court denies the claim on state procedural grounds, a federal court will not reach the merits of those claims if it determines that the state-law grounds are independent of the federal claim and adequate to bar federal review.  *See Sawyer v. Whitley*, 505 U.S. 333, 338 (1992); *Coleman v. Thompson*, 501 U.S. 722, 735 (1991).  However, if the state procedural determination is based on state grounds that were inadequate to bar federal habeas review, or if the habeas petitioner shows that an exception to the bar applies, the federal court must resolve the claim without the deference AEDPA otherwise requires.  *See Miller v. Johnson*, 200 F.3d 274, 281 n.4 (5th Cir.2000) ("Review is de novo when there has been no clear adjudication on the merits." (citing *Nobles v. Johnson*, 127 F.3d 409, 416 (5th Cir.1997))); *Mercadel v. Cain*, 179 F.3d 271, 274-275 (5th Cir.1999) ("the AEDPA deference scheme outlined in 28 U.S.C. § 2254(d) does not apply" to claims not adjudicated on the merits by the state court); *Woodfox v. Cain*, 609 F.3d 774, 794 (5th Cir. 2010) (the AEDPA deferential standard of review would not apply to a procedural decision of the state court).

### C. State-Court Merits Determinations

If the state court denies the claim on the merits, a federal court may not grant relief unless it first determines that the state court unreasonably adjudicated the claim, as defined in § 2254(d):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that

was adjudicated on the merits in State court proceedings unless the adjudication of
the claim——

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

*Id.*  In the context of § 2254(d) analysis, "adjudicated on the merits" is a term of art referring to a

state court's disposition of a case on substantive rather than procedural grounds.  *Green v. Johnson*,

116 F.3d 1115, 1121 (5th Cir. 1997).  This provision does not authorize habeas relief, but restricts

this Court's power to grant relief to state prisoners by barring claims in federal court that were not

first unreasonably denied by the state courts.  The AEDPA limits rather than expands the availability

of habeas relief.  *See Fry v. Pliler*, 551 U.S. 112, 119 (2007); *Williams v. Taylor*, 529 U.S. 362, 412

(2000).  "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state

court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)."  *Richter*, 131 S.Ct. at 784.  "This

is a 'difficult to meet,' and 'highly deferential standard for evaluating state-court rulings, which

demands that state-court rulings be given the benefit of the doubt.'"  *Cullen v. Pinholster*, 131 S.Ct.

1388, 1398 (2011) (internal citations omitted) (quoting *Richter*, 131 S.Ct. at 786, and *Woodford v.

Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).

Under the "contrary to" clause, a federal court is not prohibited from granting federal habeas

relief if the state court either arrives at a conclusion opposite to that reached by the United States

Supreme Court on a question of law or decides a case differently from the United States Supreme

Court on a set of materially indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. at 412-13;

*Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). Under the "unreasonable application" clause, a federal court may also reach the merits of a claim on federal habeas review if the state court either unreasonably applies the correct legal rule to the facts of a particular case or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply. *Williams*, 529 U.S. at 407. The Supreme Court recently reaffirmed the high and difficult standard that must be met.

> "'[C]learly established Federal law'" for purposes of § 2254(d)(1) includes only "'the holdings, as opposed to the dicta, of this Court's decisions.'" And an "unreasonable application of" those holdings must be "'objectively unreasonable,'" not merely wrong; even "clear error" will not suffice. Rather, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.".

*White v. Woodall,* ___ U.S. ____, 2014 WL 1612424 (Apr. 23, 2014) (citations omitted).

Federal habeas relief is not available on a claim adjudicated on the merits by the state court unless the record before the state court first satisfies § 2254(d). "[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Pinholster*, 131 S.Ct. at 1400. The evidence required under § 2254(d)(2) must show that the state-court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

**IV**

*A. Mitigation Instructions*

In his first claim, Flores claims that the indictment and jury instructions on the mitigation special issue were constitutionally defective (Pet. at 7-31).  Specifically, Flores complains that

(1)    the "10-12 Rule"[1] of the Texas capital sentencing scheme

        (a)    prevents the jury from giving due consideration to mitigating evidence in violation of *Mills v. Maryland*, 486 U.S. 367(1988), (Pet. at 11-14) and

        (b)    undermines their sense of responsibility for imposing a death sentence (Pet. at 14-21),

(2)    the state is not required to prove beyond a reasonable doubt that the defendant should be sentenced to death (Pet. at 21-28); and

(3)    the mitigation instruction is excessively vague, thereby resulting in arbitrary and capricious sentencing patterns (Pet. at 28-31).

Respondent asserts that the first part of this claim, the complaint against the "10-12 Rule," was found to be procedurally barred by the state court (Ans. at 11-13), and that the rest is unexhausted and would now found to be procedurally barred by the state abuse-of-the-writ rule (Ans. at 21-29).  Respondent also asserts that this claim is barred by the non-retroactivity doctrine of *Teague v. Lane* (Ans. at 19-21, 23, & 29), and lacks merit (Ans. at 11, 13-18, 19-21).

### 1. State Court Findings

Flores presented only a portion of the first part of this claim, complaints against the 10-12 Rule, to the state court as his second claim in the state habeas proceedings.  (1 SHR 13-29.)  The state habeas court found that such complaint was entirely based on the record available on direct appeal and that, because Flores did not raise it in his direct appeal, it was procedurally barred from

---

[1] This rule is also referred to as the "12-10 Rule."  *See Parr v. Thaler,* 481 F. App'x 872, 874 (5th Cir. 2012) *cert. denied,* 133 S. Ct. 842 (2013); *Holiday v. Stephens,* No. 4:11-CV-1696, 2013 WL 3480384 (S.D. Tex. July 10, 2013).

review in the state habeas proceedings.  (2 SHR 698-99 (citing *Ex parte Gardner*, 959 S.W.2d 189, 198-200 (Tex. Crim. App.1998).)  The state court also found, in the alternative, that the jurors were properly informed, that the instruction did not violate the Constitution, and that even if it did, that no harm had been shown.  (2 SHR 699-705.)

### 2.  *Magistrate Judge's Findings and Recommendation*

The Magistrate Judge found that the state court denied the first part of this claim that concerned the "10-12 Rule" on the independent and adequate procedural bar announced in *Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1996).  (Rec. at 4-5 (citing 2 SHR at 698-99).)  The Magistrate Judge also found that the second and third parts of this claim were unexhausted and would now be procedurally barred if presented to the state court, were plainly meritless, and were barred by the *Teague* nonretroactivity doctrine.  (Rec. at 5-7.)  The Magistrate Judge recommended that relief be denied.

### 3.  *Objections*

Flores objects to the Magistrate Judge's finding that the first part of this claim is procedurally barred and argues that he has shown cause and prejudice to excuse the procedural bar.  (Obj. at 37-38.)  Flores argues that he has shown good cause in that his counsel was ineffective for failing to raise this complaint in the direct appeal (Obj. at 38), and that he has shown prejudice in that his jury was misled.  (Obj. at 39-42.)  Flores also argues that he has shown a fundamental miscarriage of justice in that, if the Court does not reach the merits of this claim, he will have been executed without any court considering whether he was denied his rights under the Constitution.  (Obj. at 43.)

Flores also objects to the Magistrate Judge's finding that the remainder of the first claim is plainly meritless.  (Obj. at 43-47.)  Flores argues that the reasoning of the Supreme Court in

*Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Ring v. Arizona*, 536 U.S. 584, 589 (2002), would require the prosecution to prove the lack of mitigation beyond a reasonable doubt. (Obj. at 44-45.) He also argues that the sentencing structure provided by Texas law did not adequately define mitigating circumstances to allow the jury to exercise its reasoned moral judgment and, instead, resulted in a death sentence that was wantonly and freakishly applied. (Obj. at 45-47.)

### 4. Analysis

Flores's objections do not show any entitlement to relief.

This claim includes many subparts, only the first part of which was actually presented to the state court. The portion that was presented was found by the state habeas court to be procedurally barred by the *Gardner* rule. (1 SHR 697-99.) The remainder is unexhausted and would now be found procedurally barred by the state court under its abuse-of-the-writ doctrine. (Rec. at 5-6.) The Magistrate Judge correctly found that the state court had denied the first part of this claim as procedurally barred, and the remainder of this claim as unexhausted and now procedurally barred by the Texas abuse-of-the-writ rule. (Rec. at 4-7.)

Regarding the asserted exceptions to bar, the Recommendation correctly noted that Flores had not made an attempt to show any of these exceptions apply. (Rec. at 5.) Issues raised for the first time in objections to the report of a magistrate judge are not properly before the district judge. *See United States v. Armstrong,* 951 F.2d 626, 630 (5th Cir.1992); *Finley v. Johnson,* 243 F.3d 215, 219 (5th Cir. 2001). Therefore, the argument that this claim falls within an exception to bar is waived.

Even if it were not waived, however, the argument would fail. The Magistrate Judge also correctly observed that the required showing of actual prejudice to support an exception to

procedural bar for cause and prejudice or manifest injustice "would be difficult, if not impossible, for petitioner to demonstrate" because his constitutional challenges to the 10-12 Rule are foreclosed by Fifth Circuit precedent.  (Rec. at 5 n.3 (citing *Alexander v. Johnson*, 211 F.3d 895, 897 (5th Cir. 2000); *Hughes v. Johnson*, 191 F.3d 607, 625-26 (5th Cir. 1999); *Jacobs v. Scott*, 31 F.3d 1319, 1328-29 (5th Cir. 1994).)  Flores does not address the binding Circuit precedents set forth in the Recommendation, and has not established any merit to this claim.  Accordingly, appellate counsel could not have been ineffective in failing to raise a meritless claim.  *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite.").  Further, Flores has not made the showing of actual innocence necessary to establish a manifest-injustice exception, but appears to argue that this exception exempts death-sentenced inmates from any procedural bar.  (Obj. at 43.)  Since he has not addressed the Magistrate Judge's finding that this claim is foreclosed on the merits by Circuit precedent, however, there is no need to further address Flores's argument for the creation of such a new exception for death-sentenced inmates.

Regarding the remainder of the first claim, even if these subclaims were not procedurally barred, they may also be denied on the merits.  Flores concedes that "there is no Supreme Court precedent explicitly stating that the state must prove the absence of mitigating circumstances beyond a reasonable doubt."  (Obj. at 44.)  He argues, however, that the reasoning of *Apprendi* and *Ring* would support such a requirement.  (Obj. at 44-45.)  The Recommendation specifically noted binding Circuit precedent undermining Flores's argument and distinguishing *Apprendi* and *Ring*.  (Rec. at 7 (citing *Rowell v. Dretke*, 398 F.3d 370, 378 (5th Cir. (2005).)  Flores does not address this precedent either.  Since this portion of the first claim "has been previously rejected in both state and

federal court, and is not supported by Supreme Court authority," *Scheanette v. Quarterman*, 482 F.3d 815, 828 (5th Cir. 2007) (footnote omitted), the Recommendation properly determined that it was plainly meritless and barred by *Teague*.  (Rec. at 7.)

The Recommendation also notes that Flores provides no supporting authority for his complaint that the mitigation instruction was impermissibly vague and that the jury instructions were arbitrary and capricious.  (Rec. at 7.)  Not only is the Recommendation correct, there is authority against Flores's position.  The United States Court of Appeals for the Fifth Circuit has consistently rejected the complaint that the definition of "mitigating evidence" in article 37.071, § 2(e) of the Texas Code of Criminal Procedure violates the Eighth and Fourteenth Amendments to the United States Constitution (Pet. at 31).  In *Beazley v. Johnson*, 242 F.3d 248, 258-59 (5th Cir. 2001), the Court of Appeals held that the capital sentencing scheme codified in article 37.071 "does not unconstitutionally 'preclude the jury from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death," and concluded that "all mitigating evidence can be given effect under the broad definition of mitigating evidence found in" § 2(e)(1), and that the definition of mitigation evidence in article 37.071 § 2(f)(4) "does not limit the evidence considered under" § 2(e)(1). *See also Blue v. Thaler*, 665 F.3d 647, 666 (5th Cir. 2011) (noting that the opinion in *Beazley* "stressed that "'[v]irtually any mitigating evidence is capable of being viewed as having some bearing on the defendant's 'moral culpability,'" and that this Circuit has consistently reaffirmed its holding in *Beazley*.).  The Recommendation correctly concluded that, even if these complaints were not meritless, they would be barred by the nonretroactivity doctrine in *Teague v. Lane,* 489 U.S. 288 (1989).  (Rec. at 7.)

The Court finds all parts of the first claim to be procedurally barred.  Even if the procedural bar did not apply, however, each of the complaints in this claim lack merit and would be *Teague* barred as well.  The first claim is thus **DENIED**.

## B.  Brady Claim

In his second claim, Flores complains that the prosecutor failed to disclose impeachment evidence, specifically, of the mental illness and employment problems of Charles Linch, the State's trace evidence analyst, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  (Pet. at 32-44.) Respondent argues that Flores relies upon evidence not presented to the state courts, that the claim lacks merit and that it was properly denied by the state courts.  (Ans. at 30-44.)

### 1.  State Court Findings

Flores presented this claim to the state court in the eighth, ninth and tenth claims in his state postconviction application for a writ of habeas corpus.  (1 SHR at 86-101.)  The state habeas court found that the prosecutors did not know of Linch's prior treatment for mental illness (2 SHR 745-46), that they could not be imputed with knowledge of Linch's mental illness because Linch was not part of the prosecution team (2 SHR at 746-47), and that the prosecutor's duty to learn of exculpatory evidence did not include the mental health evidence in question (2 SHR at 747-48).  The state court concluded that the State did not suppress any potential *Brady* material related to Linch's mental health history.  (2 SHR at 748.)  The state court also found that the evidence was not "favorable" to Flores or "material" to his case.  (2 SHR 748-50.)  The state court concluded that, because Linch had been called to prove that potatoes had been used as silencers, and due to the uncontradicted testimony that potatoes had in fact been used as silencers during the offense and the existence of

potato fragments "all over the crime scene," Linch's testimony was not vital to the State's case against Flores.  (2 SHR at 749.)

### 2.  *Magistrate Judge's Findings and Recommendation*

The Magistrate Judge set forth the elements of *Brady*, and discussed the potential impact of two exhibits that were not presented to the state court or considered in the state habeas proceedings. (Rec. at 10-11.)  The Magistrate Judge found that, even considering the new evidence, Flores had not shown that the state court's finding that the prosecution did not know of the potential impeachment evidence was incorrect by clear and convincing evidence.  (Rec. at 10-12.)  The Magistrate Judge recommended that relief be denied.

### 3.  *Objections*

Flores objects that the Recommendation incorrectly found that there was "no evidence" that the prosecution team "knew or should have known" about the impeachment evidence.  (Obj. at 33.) He complains that the Recommendation does not distinguish between cases in which the prosecution does not have any reason to believe that the impeachment evidence exists and cases where it does. (Obj. at 33.)  He also complains that the Recommendation improperly discounted the importance of one of the new exhibits, a memo written by Linch a year before the trial, because it was not known to the prosecution at the time of the trial (Obj. at 33-34), and that such reasoning would encourage further suppression efforts.  (Obj. at 34.)

### 4. *Analysis*

This claim was denied on the merits by the state court.  Therefore, Flores must make the difficult showing under § 2254(d) that the state court adjudication was unreasonable or contrary to

clearly established federal law.  Evidence before the federal court that was not presented to the state court may not be considered in making this preliminary showing.  *See Pinholster*, 131 S.Ct. at 1400.

While the Magistrate Judge's analysis of the merits of this claim under § 2254(e) properly recommended its denial, he was more generous to Flores than necessary.  Flores cannot meet the high and difficult standard of § 2254(d) for this claim.  He relies on evidence that was not presented to the state courts and cannot be considered by the federal court in making its determination under § 2254(d).  Therefore, Flores's objections are overruled, and the Recommendation is accepted as modified by this order.  Flores's second claim is **DENIED**.

## C.  *Hypnotically Induced Testimony*

In his third claim, Flores complains that he was deprived of due process and the right of confrontation when the trial court allowed the State to introduce identification testimony from a witness whose recollection had been hypnotically enhanced. (Pet. at 44-48.) Respondent asserts that this claim is unexhausted and procedurally barred, and that the Confrontation Clause portion of this complaint is waived because it is inadequately briefed. (Ans. at 44-45.) Respondent also asserts that the claim lacks merit.  (Ans. at 45-51.)

### 1.  *State Court Findings*

During the trial, the State called Jill Bargainer, a neighbor of the victim, as a witness in its case in chief.  Bargainer first testified in a hearing outside of the presence of the jury that she told the police that she saw two men exit a Volkswagen on the day that the victim was murdered, that she described the men to the police, and that she identified Richard Childs as the driver from a photographic line-up.  (Vol. 35, Reporter's Record ("RR") at 154-56.)  She had not previously identified Flores, and trial counsel expressed concerns about her testimony because she had

- 14 -

undergone hypnosis.[2] (35 RR 153, 157-61.) After the *sub rosa* hearing, she informed the prosecutor that she recognized Flores from seeing him in the courtroom as one of the two men that exited the Volkswagen and entered the victim's residence.  (36 RR 15.)

The next day, the trial court conducted a hearing pursuant to *Zani v. State*, 758 S.W.2d at 243, to determine whether Bargainer's identification testimony was inadmissible due to the hypnosis. The trial court found that the identification testimony was admissible, that the hypnosis session complied with *Zani*, and that the in-court identification was not rendered untrustworthy by reason of the hypnosis.  (36 RR 117-18.)

On direct appeal, Flores complained in his ninth point of error that the trial court erred by admitting the identification testimony of Bargainer because the state failed to prove that the hypnosis had not tainted her testimony.  (App. Br. at 63-71.)  The CCA denied this complaint on the basis that the trial court's procedures substantially complied with *Zani*, that it was aware of the dangers inherent in hypnosis, that it did not abuse its discretion in allowing the testimony, and that the jurors were free to attach whatever weight they deemed appropriate to Bargainer's testimony.  *Flores v. State*, No. 73,463, slip op. at 22-23.

---

[2]Trial counsel anticipated that Bargainer could recognize Flores in the courtroom.

My big worry is none of us in this room know what's (sic) she's going to say when she's asked to look around and see if she can identify somebody.  In fact, she has not previously picked out Charles Flores from a lineup or anywhere else.  It doesn't mean she's not going to do it here today.  And it's for that reason that we are going to ask the Court to hold to the rulings of [*Zani v. State*, 758 S.W.2d 233 (Tex. Crim. App. 1988)], have this hearing, and hold the State to the burden the law puts upon them of clear and convincing testimony that the hypnosis session hasn't affected her identification or potential identification of Charles Don Flores here in Court today.  That's what we're concerned about.

(35 RR 160-61.)

In the state habeas proceedings that followed, Flores again presented this claim as his seventh claim for relief.  (1 SHR 77-85.)  The state habeas court found that this claim was barred from consideration in the habeas proceedings because it had been raised and rejected in the direct appeal, and Flores had not shown that his direct appeal did not provide the CCA with an adequate record to evaluate the issues.  (2 SHR 734 (citing *Ex parte Torres*, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997)).)  The state habeas court also analyzed the merits of the claim in the alternative, reaffirmed its prior findings, found that Flores had failed to show that the witness's identification of him was the result of hypnosis or unconstitutionally tainted, and concluded that the testimony was properly admitted and, even if it was not, that any harm was prevented by a curative instruction.  (2 SHR 735-41.)  These findings were adopted by the CCA in its order denying relief.  *Ex parte Flores*, WR-64,654-01, 2006 WL 2706773, at *1.

### 2.  Magistrate Judge's Findings and Recommendation

The Magistrate Judge recounted the state court proceedings on Flores's complaints against the use of Bargainer's testimony, the findings of the trial court that the testimony was properly admissible under the standards announced in *Zani v. State*, and the findings of the state habeas court confirming the earlier findings.  (Rec. at 12-14.)  The Magistrate Judge then discussed the affidavit presented by Flores to this Court that was not presented to the state habeas court, and concluded that even if it could consider that affidavit, it "does not overcome the presumption of correctness attached to the state court findings," and recommended that this claim be denied.  (Rec. at 15.)

### 3.  Objections

Flores objects that the Recommendation improperly gave deference to the habeas court's finding that the same judge's decision at trial to admit the testimony was correct and did not violate

- 16 -

Flores's Fourteenth Amendment right to due process and Sixth Amendment right to confrontation. (Obj. at 34.)  Although conceding that the Recommendation correctly states the general facts and circumstances surrounding the identification testimony (Obj. at 34), and that "there is no Supreme Court case law directly on point" (Obj. at 35), Flores then argues that the witness's testimony was not credible (Obj. at 34-35), and that the state judge was biased in ruling against Flores at trial and in the state habeas proceedings in violation of Flores's due process rights (Obj. at 35-37).  Flores concludes by arguing that the Recommendation erred in giving deference to the state court findings because the same judge at trial affirmed these findings in the state habeas proceedings.  (Obj. at 37.)

### 4. Analysis

The Recommendation was correct to afford AEDPA deference to the state court adjudication, but again, in light of intervening Supreme Court precedent, was too generous to Flores in considering evidence that was not presented to the state court.  Flores complains of the state court's adjudication of the claim he presented, but has not satisfied the standard of § 2254(d), and this Court cannot consider evidence that was not presented to the state courts in making that determination.  *See Pinholster*, 131 S.Ct. at 1400.

To the extent that Flores complains that his due process rights were violated by the partiality of the same state judge that denied his trial objection and state habeas claim, he did not present this argument in his petition or reply, and the Magistrate Judge had no occasion to rule on these matters as they are now presented in his objections.  (Obj. at 35-37.)  The CCA and not the trial court, however, was the state court that denied Flores's complaint about the hypnosis testimony on direct appeal and made the ultimate decision to deny habeas relief.  Therefore, the same judge did not ultimately make both decisions, but even if it were so, that would not allow this Court to disregard

AEDPA deference.  *See Valdez v. Cockrell,* 274 F.3d 941, 948 (5th Cir. 2001) (holding that "a full and fair hearing is not a prerequisite to the application of AEDPA's deferential framework").

Flores has not shown that the state court's adjudication was unreasonable or contrary to clearly established federal law as determined by the Supreme Court.  *See* 28 U.S.C. § 2254(d).  The Court adopts the Recommendation to deny relief as modified by this order.  Flores's third claim for relief is **DENIED**.

### D.  State Habeas Counsel

In his fourth claim, Flores complains that he was denied the effective assistance of counsel on state habeas review.  (Pet. at 48-89.)  Respondent asserts that this claim is unexhausted,[3] is not cognizable on federal habeas review, and lacks merit.  (Ans. at 51-55.)

#### 1.  State Court Action

During the state habeas proceedings, Flores filed pro se documents including letters to the CCA and trial court, a pro se motion to dismiss ineffective counsel (1 SHR 112-13), and his pro se amendments to his application for a writ of habeas corpus.  These pro se amendments included Flores's thirtieth and thirty-first claims that he was "denied the effective assistance of counsel on habeas corpus review" and that the counsel appointed to represent him in the state habeas proceedings "abandoned Flores in the middle of the process," thus denying him the effective assistance of counsel as well as due process under the Fifth, Sixth and Fourteenth Amendments.  (1 SHR 144-151.)  Flores's complaints centered largely on counsel's refusal to include certain claims

---

[3]Respondent asserts that "Flores has yet to present this claim to the state courts."  (Ans. at 51.)  Neither party acknowledges the pro se complaints regarding habeas counsel that were presented in the state habeas proceedings as supplemental claims.  (1 SHR 144-151; 2 SHR 808-13.)

that had been requested and on problems in the attorney/client relationship, especially in communications between attorney and client.

The state habeas court denied this pleading as unauthorized under its prohibition against hybrid representation (2 SHR 808), and as not presenting a cognizable constitutional claim because there is no constitutional right to counsel on state habeas review (2 SHR 808-11). In the alternative, the state habeas court found that Flores had failed to demonstrate deficient representation on habeas (2 SHR at 811) and that: "The documents filed by habeas counsel demonstrate that habeas counsel was well acquainted with the record and the facts of the case. Exhibits filed in support of the application reveal that counsel conducted the investigation essential to support those claims." (2 SHR 811-12.) The state habeas court found that "at best, Applicant's habeas proof reveals only that there were some differences of opinion during the attorney/client relationship," and did not show that counsel had "abandoned" Flores, failed to investigate or otherwise ignored his statutory duty. (2 SHR 812-13.) These findings were adopted by the CCA. *Ex parte Flores*, WR-64,654-01, 2006 WL 2706773, at *1.

### 2.  *Magistrate Judge's Findings and Recommendation*

The Magistrate Judge found that there is no constitutional right to counsel in state postconviction habeas proceedings. (Rec. at 15.) The Recommendation stated that Flores's state-law right to "competent" counsel in those proceedings is not judged by Sixth Amendment standards and does not give rise to a federal claim under the Constitution. (Rec. at 15.) The Magistrate Judge recommended that relief be denied.

### 3.  *Objections*

- 19 -

Flores makes several objections to the Recommendation to deny relief on this claim.  He contends that by finding that there is no recognized constitutional right to the effective assistance of counsel in state habeas proceedings, the Magistrate Judge "created a rule" that makes the right to the effective assistance of counsel at trial illusory because the postconviction habeas proceedings are the only state forum for effectively addressing these claims.  (Obj. at 15-20, 25-31.)  Flores objects to the finding that the state statutory requirement of "competent counsel" did not create an enforceable property right under the Due Process Clause (Obj. at 20-22) to the effective assistance of counsel under Sixth Amendment standards (Obj. at 22-24).  Flores also objects to the failure of the Recommendation to address the underlying ineffective-assistance-of-trial-counsel claim that trial counsel failed to complete the hearing begun under *Batson v. Kentucky,* 476 U.S. 79 (1986).  (Obj. at 31-33.)

### *4. Analysis*

In some ways, Flores's arguments presciently anticipated the Supreme Court's decisions in *Martinez* and *Trevino*, but not enough to warrant relief on this claim.  Although the Supreme Court granted certiorari in *Martinez* to determine whether the Constitution guaranteed effective assistance of counsel on state habeas review,[4] it did not ultimately recognize such a new constitutional right that could support a free-standing claim in federal habeas proceedings.  In its opinion reversing the

---

[4]The question presented in the petition for writ of certiorari was as follows:

Whether a defendant in a state criminal case who is prohibited by state law from raising on direct appeal any claim of ineffective assistance of trial counsel, but who has a state-law right to raise such a claim in a first post-conviction proceeding, has a ***federal constitutional right to effective assistance of first post-conviction counsel*** specifically with respect to his ineffective-assistance-of-trial-counsel claim.

Petition for Writ of Certiorari, *Martinez v. Schriro,* 2011 WL 398287, at i (No. 10-1001), *granted sub nom Martinez v. Ryan*, 131 S.Ct. 2960 (2011) (emphasis added).

- 20 -

United States Court of Appeals for the Ninth Circuit, the Supreme Court noted that the question had been framed as a constitutional one, but that an equitable exception to procedural bar for substantial ineffective-assistance-of-trial-counsel claims that were not presented to the state court due to the ineffective assistance of state habeas counsel would be sufficiently dispositive. *Martinez,* 132 S. Ct. at 1313, 1320. This does not help Flores because he did not make any separate claim of ineffective assistance of trial counsel.

To remedy this, Flores has embedded in his supplemental briefing on *Martinez* and *Trevino* requests for leave to amend his pleadings to include new ineffective-assistance-of-trial-counsel claims. (P's Supp. Br., doc. 82, at 31, 44, 48, 55-57; P's Supp. Br. on *Trevino*, doc. 95, at 10.) The Court **DENIES** these requests. Flores's argument that the claims only became "ripe" after *Martinez* and *Trevino* is not persuasive. He could have set forth in the original petition any potentially meritorious ineffective-assistance-of-trial-counsel claims that he may have had, even if any such claims may have been subject to a procedural bar at the time. Instead, he chose to present a different claim that is wholly without cognizance in federal habeas proceedings: that his counsel in state habeas proceedings was ineffective. *See, e.g.,* 28 U.S.C. § 2254(i) (providing that "the ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief."). This may well have been a considered decision, however, since the underlying allegations of ineffective assistance of trial counsel appear meritless.

In the introduction to his petition, Flores generally asserts that he did not receive the effective assistance of counsel guaranteed by the Sixth Amendment in all stages of his criminal proceedings: the guilt/innocence phase, the punishment phase, the direct appeal, and the state habeas proceedings. (Pet. at 1-3.) The only claim of ineffective assistance of counsel that he actually presented, however,

was that his counsel on state habeas review was ineffective.  In support of this claim, he set forth

twelve subparts (A-L).  In one of these subparts, Subpart J, Flores asserts that his state habeas

counsel was ineffective in failing to assert an ineffective-assistance-of-trial-counsel claim: that trial

counsel failed to resume the hearing begun under *Batson v. Kentucky,* 476 U.S. 79 (1986).[5]  (Pet. at

81-84.)

Although it is not entirely clear from the shifting allegations of the different subparts of this

claim,[6] it appears that Flores argues in this underlying complaint that because the trial court

"determined" that Flores had made a prima facie case for discrimination and because the trial court

"curiously" and "inexplicably" failed to resume the hearing, the prosecution never met its duty to

make a race-neutral explanation for a peremptory strike.  (Pet. at 75.)  Therefore, Flores argues that

he met his burden under *Batson* and was deprived of his right to equal protection in the selection of

his jury.

The record indicates, however, that the trial court did not "determine" that Flores made a

prima facie case for discrimination in challenging veniremember Cantu.  Instead, the trial judge

repeatedly stated that he did not observe anything in the examination of Cantu, or in the exercise of

the peremptory challenge of her, that appeared to be racially motivated.  (28 RR at 106, 108.)

Instead, it appeared that the trial court wanted to hear from the prosecutor out of an abundance of

---

[5]Flores also makes a vague allegation that his trial counsel failed to conduct a sufficient investigation. (Pet. at 1-3, 57, 61-62.)  Flores does not, however, present this as a separate claim or set forth in his petition what material evidence, if any, was not presented in his trial.

[6]Flores argues in Subpart I that his "trial counsel timely and properly interposed a *Batson* objection" (Pet. at 75), and "never waived" it (Pet. at 80).  In Subpart J, however, Flores complains that trial counsels' performance in this regard was "woefully inadequate," that they "abandoned their duty" to Flores, and that their failure "seemingly abandoned" Flores's rights and "will waive any error" under *Batson*. (Pet. at 81-82.)

caution and because the trial judge did not fully recall everything from the examination that had occurred the prior day.[7]  (28 RR at 104, 106, 108.)  No objection was made, however, at the time of the peremptory challenge when everyone's memory was fresh and when trial counsel would have been more aware of any actual problems in the exercise of the challenge.  (27 RR at 110.)  Further, the trial court did not "inexplicably" recess the hearing, but did so because the prosecutor that had conducted the examination of Cantu was unavailable.  (28 RR at 108.)  Therefore, the record clearly indicates a reasonable basis for the recess of the hearing.

Even so, the record does not indicate why the hearing was not resumed, what would have happened if it had been, or what may have transpired off of the record to resolve this issue.  Federal habeas counsel does not set forth his efforts to obtain this information or any reasonable expectation that such information would authorize habeas relief.  There is no indication that the trial court would have altered its opinion about whether there was any racial motivation in exercising the peremptory strike or that the defense attorney's action in not resuming that part of the hearing was anything other than a reasonable decision to not waste any more time on a futile action.[8]  Accordingly, it would be

---

[7]Regarding veniremember Castillo, the trial court did not find that the defense had made a prima facie showing that a peremptory challenge has been exercised on the basis of race, but merely "assumed" that they had in order to hear the prosecutor's side.  (28 RR at 106.)  The prosecutor then provided what the trial court found to be a proper, race-neutral explanation, and the court found that the prosecutor's exercise of the peremptory challenge of Castillo was not based on any racial reason.  (28 RR at 108.)

[8]The record does, however, provide clues regarding possible reasons for the peremptory challenge. Cantu often equivocated in her answers to the prosecutor's questions, but not to those of defense counsel. For example, she frequently answered the prosecutor's questions "I guess" (27 RR at 36, 39, 40, 41, 45, 46, 47, 48, 51, 53, 54, 57, 59, 60, 63, 64, 68, 70, 74, 75), but never used that phrase in response to the defense counsel's questions.  Her testimony and answers to the jury questionnaire suggested that she was concerned about the justice system, believed that there would always be doubt about guilt, and expressed anxiety about an innocent person being proven guilty.  (27 RR at 40-41.)  She also listed concerns about eyewitness testimony when the witness only had a fleeting moment to view the suspect.  (27 RR at 47-48.)  Cantu also had a nephew who had problems with drug use, and the prosecutor seemed to know who he was and that he had been sent to boot camp.  (27 RR at 48-49.)  Even defense counsel had expressed concerns with Cantu

- 23 -

pointless to grant leave to amend the petition to allege this as a separate claim.  Assuming that such

a new, independent claim would relate back to the allegations filed within the limitations period to

avoid the time bar, *see* Fed. R. Civ. P. 15(c)(1)(B), it would appear to be insubstantial and, therefore,

not come within the exception to procedural bar created in *Martinez*.  If leave to assert this as a

separate claim were granted, it would be dismissed as procedurally barred or denied as meritless.

Allowing leave to amend the petition to assert the other claims of ineffective assistance of

trial counsel would fare no better.  Flores seeks to set forth a claim that trial counsel was ineffective

in failing to investigate and present potentially mitigating evidence, even though counsel obtained

the expert assistance of a psychiatrist and authorization to also obtain assistance from a psychologist

to administer tests.  (P's Supp. Br. at 31-32 & Ex. No. 3.)  Flores complains of the absence of a

comprehensive written report, but does not explain why such a written report is necessary or whether

it could have been discoverable on cross examination and therefore not desired by trial counsel.  (P's

Supp. Br. at 32.)  Flores also lists areas of potentially mitigating evidence that were known to him

as early as September 4, 2007, but does not adequately explain why they were not made a separate

claim or even set forth in his original petition filed on September 18, 2007, or in the amended

petition filed on March 24, 2008.  (P's Supp. Br. at 33-34 and Ex. No. 5.)  He now claims that he

would like to investigate these areas of potentially mitigating evidence, but does not identify which,

if any, of these areas were not already known to and reasonably considered by trial counsel in

apportioning the limited investigative resources available before trial as required by *Wiggins v.

Smith,* 539 U.S. 510, 521 (2003) (holding that the focus is not on whether particular mitigating

evidence was presented but whether the investigation supporting counsel's decision was itself

---

(27 RR at 79, 81), but was apparently able to resolve them (27 RR 80-81, 86-87, 107-08, 110).

reasonable).[9]  (P's Supp. Br. at 34-43.)  Therefore, these allegations are not shown to have any merit as an independent claim and would not come within the exception to procedural bar created in *Martinez*.  Also, as Respondent asserts, this new claim would be time-barred because it does not relate back to the allegations of the original or amended petitions.  (R's Supp. Br. at 11-20 (citing 28 U.S.C. § 2244(d)).)

Similarly, Flores seeks to amend to include a new claim that trial counsel failed to adequately contest the testimony of Jill Bargainer as hypnotically induced, but this claim would also be procedurally barred and time barred.  As set forth in the Recommendation, Flores has not shown that an objection to this testimony would reasonably have prevailed if it had included the new evidence presented in these proceedings.  (Rec. at 12-15.)  Since trial counsel could not be faulted for failing to take a futile action, *see Clark v. Collins*, 19 F.3d at 966, an ineffective-assistance-of-trial-counsel claim for failing to make this objection would not be substantial as required by *Martinez*.  Again, even if it were not procedurally barred, there is no indication that, as a new claim presented in an amendment more than six years after the original petition, this would not also be time barred.  *See* 28 U.S.C. § 2244(d).  No good purpose would be served by allowing leave to amend at this late date.

Flores's fourth claim is **DENIED** for the reasons set out in the Recommendation, and the motions to amend are **DENIED** for the reasons set forth in this order.

## V

The referral of this case to the United States Magistrate Judge (doc. 89) is **CANCELLED**.  The embedded motions for leave of court to amend the petition (doc.s 82, 95) are **DENIED**.  The

---

[9] In fact, Flores suggests that he discussed at least some of this with trial counsel.  (Supp. Br. at 31.)

Objections (doc. 70) are **OVERRULED**, the Recommendation (doc. 60) is **ACCEPTED AS MODIFIED** in this order, and the petition for writ of habeas corpus (doc. 37) is **DENIED**.

Considering the record in this case and pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing §§ 2254 and 2255 proceedings, and 28 U.S.C. § 2253(c), the Court **DENIES** a certificate of appealability. The Court **ADOPTS and INCORPORATES by reference** the Magistrate Judge's Findings, Conclusions and Recommendation (F&R) filed in this case, **as MODIFIED in this order**, in support of its finding that the petitioner has failed to show (1) that reasonable jurists would find this Court's "assessment of the constitutional claims debatable or wrong," or (2) that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In the event the petitioner files a notice of appeal, the Court notes that Flores will be allowed to proceed *in forma pauperis*.

**SO ORDERED.**

Date: July 17, 2014.

BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS